[Civ. No. 13689. Third Dist. July 3, 1973.]

AMERICAN FRIENDS SERVICE COMMITTEE et al.,
Plaintiffs and Respondents, v.
R. K. PROCUNIER, as Director, etc., et al.,
Defendants and Appellants.

**COUNSEL**

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Charles P. Just, Marjory Winston Parker and Arnold O. Overoye, Deputy Attorneys General, for Defendants and Appellants.

Peter E. Sitkin, J. Anthony Kline, Charles R. Lawrence and Fred J. Hiestand for Plaintiffs and Respondents.

B. E. Bergesen III, Charles C. Marson, Peter E. Sheehan, William Bennett Turner, Lowell Johnston, Julian Fowles, Mario G. Obledo, Sanford J. Rosen, Alan Exelrod and Anthony G. Amsterdam as Amici Curiae on behalf of Plaintiffs and Respondents.

**OPINION**

**RICHARDSON, P. J.**—Petitioners (herein denominated "plaintiffs"), a group of nonprofit corporations and a citizen taxpayer, filed an action in the superior court against respondents (herein denominated "defendants"), Director of Corrections (hereinafter "Director") and the chairman, vice chairman and members of the California Adult Authority (hereinafter "Authority") wherein plaintiffs sought, and obtained, a writ of mandate directing defendants, in the formulation of their rules and regulations, to comply with the provisions of the California Administrative Procedure Act (hereinafter "APA"). (Gov. Code, § 11370 et seq.) The order and judgment of the trial court in granting the peremptory writ of mandate

decreed defendants' rules and regulations invalid and required their re-promulgation under APA within two months. The judgment was subsequently amended to require immediate execution of that part of the judgment requiring the filing of defendants' rules and regulations with the Secretary of State. A further clarifying order directed new regulations promulgated under APA to be in the form necessary for publication in the Administrative Code and Register. This appeal is from the judgment and each of the orders.

We have temporarily stayed the trial court's judgment and orders above described.

Defendants contend on appeal, first, that plaintiffs lack standing to sue, which contention we reject, and, secondly, that the trial court erred in its judgment and subsequent orders to the effect that APA applies to the rules and regulations of defendants, which contention we sustain.

### STANDING

Plaintiffs are four nonprofit corporations, each of them active in, and having important, valid, helpful and legitimate interests in, the welfare of prison inmates, prison reform and assistance to prison inmates and parolees and their families in various beneficial ways. American Friends Service Committee provides aid and assistance to prisoners and parolees. Connections Guidance Center is composed of "relatives and friends" of inmates or parolees whose purpose is to aid convicts, exconvicts, parolees and their families. Brotherhood-in-Motion comprises "former inmates and parolees" and relatives and friends engaged in general assistance to prisoners and parolees. Committee For Prisoner Humanity and Justice has broad purposes of public information and education of prisoner conditions, the development of proper prison standards and assistance to prisoners, parolees and their families. The individual plaintiff is a citizen, taxpayer and legal director of The American Civil Liberties Union who represents clients affected by the Authority and the Director.

We first consider the threshold issue of "standing to sue." Defendants predicate their contention of lack of standing on the argument that none of plaintiffs is an "interested person" as that term is used in Government Code section 11440. The rule is well established that when a regulation is challenged for lack of conformity, or is invalid for some other reasons, the person so challenging must be a person who himself is subject to the regulation or affected by it. (*Chas. L. Harney, Inc.* v. *Contractors' Board* (1952) 39 Cal.2d 561, 564 [247 P.2d 913]; *Sperry & Hutchinson Co.* v. *Cal. State Bd. of Pharmacy* (1966) 241 Cal.App.2d 229, 232-233 [50

Cal.Rptr. 489]; *Associated Boat Industries* v. *Marshall* (1951) 104 Cal. App.2d 21, 23 [230 P.2d 379].)

The foregoing contention, however, has no bearing on the matter before us, for this is not a case for declaratory relief as provided in Government Code section 11440 to challenge a regulation under APA. Rather, it is a petition for mandate alleging that a government department is not complying with the law and seeking a court order compelling such compliance.

Petitioner in a mandamus proceeding must demonstrate that the writ is necessary to enforce or protect a specific legal right that is clear, present, certain and substantial. (*Parker* v. *Bowron* (1953) 40 Cal.2d 344 [254 P.2d 6]; *Monarch Cablevision, Inc.* v. *City Council* (1966) 239 Cal. App.2d 206 [48 Cal.Rptr. 550]; 5 Witkin, Cal. Procedure (2d ed. 1971) p. 3841.) Where, however, the question is one of public, as opposed to private, interest, and petitioner seeks performance of a public duty, it is said the foregoing requirements of petitioner's rights and respondent's duty have been "relaxed." (5 Witkin, *supra,* p. 3847; Cal. Civil Writs (Cont. Ed. Bar 1970) p. 73; *Fuller* v. *San Bernardino Valley Mun. Wat. Dist.* (1966) 242 Cal.App.2d 52 [51 Cal.Rptr. 120].) ▇ The rule was enunciated sometime ago by the Supreme Court, within the context of a public welfare issue, in *Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 98, 100-101 [162 P.2d 627], in the following form: " '[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced.' . . ." We have had occasion recently to apply the foregoing rule in a similar public welfare connection. (*Diaz* v. *Quitoriano* (1969) 268 Cal.App.2d 807, 811 [74 Cal.Rptr. 358].) The Director has acknowledged the obvious continuing public concern in correctional facilities of this state.

We view the object of the mandamus herein sought as the "enforcement of a public duty" within the meaning of *Bd. of Soc. Welfare* v. *County of L. A., supra* (27 Cal.2d 98).

Plaintiffs have standing to sue.

## APPLICATION OF THE ACT

The central issue presented is whether APA applies to the rules and regulations of the department, the Director and the Authority.

The rules and regulations of the Authority, known as resolutions and

policy statements, govern prisoners on parole, restoration of certain civil rights to inmates and parolees, and the grounds for suspension, cancellation and revocation of parole.

The rules and regulations of the department are promulgated by the Director and are distinguished from the institutional rules enacted by each warden of the particular institution affected. The department has classified its rules and regulations in five general categories: (1) Inmate rules, including food, clothing, education and rehabilitative opportunities, work training, behavioral standards and the like; (2) inmate privileges, including correspondence, use of library, handling of legal documents and manuscripts, use of tobacco and visiting privileges; (3) inmate activities, including religious participation, entertainment, athletic programs, inmate committees and publications; and (4) general institutional regulations, including public information, community relations, custody and security, escapes, inmate discipline and medical services and (5) personnel matters.

We examine several relevant provisions of the Penal Code establishing the affected agencies and trace their relationships. We also view APA and certain pertinent history of both the code and APA.

The department was established in 1944 by virtue of the legislative adoption of title 7 of part III of Penal Code section 5000 and following. The state constitutional roots of the authority for such enactment are found in article X, section 1. The Authority is one of the four agencies in the department. (Pen. Code, § 5001.) The department is vested with a broad spectrum of powers and duties over the penal institutions of the state (Pen. Code, §§ 5002, 5003), and its powers are exercised by the Director, save where otherwise given to the Authority or the California Women's Board of Terms and Parole. (Pen. Code, § 5055.) The Authority advises the Director on "general and specific policies and procedures relating" to his "duties and functions," and a reciprocal advisory power is possessed by the Director vis-à-vis the Authority. (Pen. Code, § 5003.5.) A similar relationship is established between the Director and The California Women's Board of Terms and Parole. (Pen. Code, § 6043.) While "[i]t is the intention of the Legislature" that the Authority and Director cooperate in the establishment of classification, transfer, and disciplinary policies, and shall meet periodically for that purpose, the Director "shall have the *final* right" to determine the policies in these areas. (Pen. Code, § 5003.5.) (Italics added.) He is a department head (Pen. Code, § 5053) and is vested with "[t]he supervision, management and control of the State prisons," and is responsible "for the care, custody, treatment, training, discipline and employment of persons confined therein. . . ." (Pen. Code,

§ 5054.) He may "prescribe rules and regulations for the administration of the prisons and may change them *at his pleasure.*" (Pen. Code, § 5058.) (Italics added.) This is conceded by plaintiffs to be an extremely broad grant of power.

Two additional provisions of the Penal Code require mention. Section 2080 requires that a copy of the rules and regulations affecting the duties and obligations of prisoners shall be furnished to them. By virtue of section 6025.5 all rules and regulations of the defendants must be filed with the Board of Corrections.

Specific provisions relate to named prisons. The Director "shall" make rules and regulations for the government of the named institution and the management of its affairs. (Pen. Code, §§ 2038, 2045.3, 2046.3, 2048.3, 2049.3.) Persons sent to the Deuel Vocational Institution are "subject to the custody, control and discipline of the Director of Corrections or the Youth Authority." (Pen. Code, § 2037.) By Penal Code section 5079, referring to the Director's control over psychiatric and diagnostic clinics "He shall have full administrative authority and responsibility for operation of the clinics."

The Authority, as one of four components of the department, is given power to grant and revoke parole and fix sentences. (Pen. Code, § 5077.) It may request the Director to transfer an inmate from one institution or facility to another, but the Director's determination in that connection is controlling. (Pen. Code, § 5080.) In the event that it and the Director disagree it may file with the Board of Corrections its proposals or recommendations. (Pen. Code, § 5003.5.)

Subject to the orders and policies established by the Department of Corrections, and operating through the Director (Pen. Code, §§ 5053, 5054, 5055) "it shall be the duty of the wardens to supervise the government, discipline and the policy of the prisons, and to enforce all orders and regulations." (Pen. Code, § 2079.) The wardens "may make temporary rules and regulations, in case of emergency, to remain in force until the department otherwise provides." (Pen. Code, § 2086.)

By definition, the prisons include all facilities, camps, hospitals and institutions for the confinement, treatment, employment, training and discipline of persons in the legal custody of the Department of Corrections. (Cf. Pen. Code, §§ 4504, 6082 with designated institutions: Pen. Code, §§ 2000, 2020, 2030, 2035, 2038, 2045, 2046, 2048, 2049.)

It will thus be seen that in 1944 the Legislature established a comprehensive plan for prison and inmate control under the Department of

Corrections, generally administered by the Director, upon the advice of the Authority.

We turn to APA and find its origin in 1947. (Gov. Code, § 11370 et seq.) We note preliminarily that it performs two functions: (1) It describes procedures for the adoption and filing of agency rules and regulations (Gov. Code, §§ 11371-11445); and (2) it provides for administrative adjudication (Gov. Code, §§ 11500-11528).

APA appears in the Government Code, specifically, title 2, "Government of the State of California," division 3, "Executive Department," part 1, "State Departments and Agencies," chapter 4, "Office of Administrative Procedure," chapter 4.5, "Rules and Regulations," and chapter 5, "Administrative Adjudication." Chapter 5, by virtue of Government Code section 11501, is made expressly applicable to 56 enumerated state agencies but does not include either the department or the Authority.

We examine pertinent portions of chapters 4 and 4.5.

Chapter 4, formerly denominated "Office of Administrative Procedure," is now entitled "Office of Administrative Hearings." Under chapter 4 (Gov. Code, § 11370.3) hearing officers are assigned "for any proceeding arising under Chapter 5 of the . . . Act." Under chapter 4.5, "Rules and Regulations," (§ 11371, subd. (b)), "Regulation" is defined as "every rule, regulation, order, or standard of general application or the amendment, supplement or revision of any such rule, regulation, order or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one which relates only to the internal management of the state agencies." Both sections 11373 and 11374 contain important qualifying language. Section 11373 contains two pertinent provisions: (1) Chapter 4.5 neither confers authority upon nor expands the authority of a state agency to adopt, administer or enforce any regulation, and (2) each regulation adopted must be within the authority conferred and standards presented by other provisions of law. Section 11374 provides that whenever a state agency has authority by statute to adopt regulations no such regulation is valid unless consistent with, and reasonably necessary to secure the purposes of, the statute. Under section 11380, subdivision (a), a certified copy of the regulation and order of repeal of a regulation are filed with the Secretary of State and the rules committee of each house of the Legislature. These, then, are published in the California Administrative Register and Code.

Article 4, sections 11420-11427, deals with "Procedure for Adoption of Regulations," and contains two relevant sections. Section 11420 states: "It is the purpose of this article to establish basic minimum procedural requirements for the adoption, amendment or repeal of administrative regulations. Except as provided in Section 11421, the provisions of this article are applicable to the exercise of any quasi-legislative power conferred by any statute heretofore or hereafter enacted, but nothing in this article repeals or diminishes additional requirements imposed by any such statute. The provisions of this article shall not be superseded or modified by any subsequent legislation except to the extent that such legislation shall do so expressly." Section 11421 declares: "(a) The provisions of this article shall not apply to any regulation not required to be filed with the Secretary of State under this chapter, and only this section and Section 11422 of this article shall apply to any regulation prescribing an agency's organization or procedure or to an emergency regulation adopted pursuant to subdivision (b) of this section."

The foregoing recitation of pertinent portions of both the code and APA highlights certain observable points of difference between the two statutes. Yet, where possible, our duty is to harmonize them. ▉ As we have recently expressed: ". . . The courts assume that in enacting a statute the Legislature was aware of existing, related laws and intended to maintain a consistent body of statutes. (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241]; *Lambert* v. *Conrad* (1960) 185 Cal.App.2d 85, 93 [8 Cal.Rptr. 56]; 1 Sutherland, Statutory Construction (3d ed.) § 2012, pp. 461-466.) Thus there is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together. (*Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377]: *Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d 252]; *Smith* v. *Mathews* (1909) 155 Cal. 752, 758 [103 P. 199]; see *Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 603 [68 Cal.Rptr. 297, 440 P.2d 497].) ▉ Also relevant when the seeming inconsistencies appear in separate codes is the rule declaring that the codes blend into each other and constitute a single statute for the purposes of statutory construction. (*Pesce* v. *Department of Alcoholic Beverage Control* (1958) 51 Cal.2d 310, 312 [333 P.2d 15]; *People* v. *Vassar* (1962) 207 Cal. App.2d 318, 322 [24 Cal.Rptr. 481.)" (*Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 54-55 [69

Cal.Rptr. 480].) ■ We have also had earlier occasion to explore the nature, scope and limitation of the judicial inquiry into the legislative intent when construing apparently conflicting statutes, and we concluded that "[t]he general objective of the provision is a prime consideration; it is to be construed with a view to promoting rather than defeating its general purpose." (*Redevelopment Agency* v. *Malaki* (1963) 216 Cal.App.2d 480, 487 [31 Cal.Rptr. 92].)

Our review of APA focuses on two pertinent provisions. Section 11371, subdivision (b), defines "Regulation" as "every rule, regulation, order, or standard of general application." Section 11380, subdivision (a)(3), requires every state agency to transmit to the Office of Administrative Procedure for filing with the Secretary of State and with the rules committee of each legislative house all of its regulations except one which "Is directed to a specifically named person or to a group of persons and does not apply generally throughout the State." Are the regulations herein presented those which, in the meaning of the above quoted sections, are of limited or general application? While it is obvious that prisons and prisoners partake of a character both special and unique, the precise language of the earlier quoted sections defining the nature, function and interrelationships does not suggest or inspire a ready answer to the question. There is an ambiguity.

Such an uncertainty invites the application of the well-established principle that courts will supply where possible by construction or interpretation of the statute a consistent and logical resolution of the ambiguity. The very statement of the principle, however, emphasizes the limitations of its definitive expression, for words are symbols which vary in their significance in the changing light of custom and usage, leading one authority to conclude "Thus the words used in a statute are always of uncertain meaning." (2 Sutherland, Statutory Construction (3d ed.) p. 316.)[1]

It is discovery of the general objectives or manifest purposes of the statutes which provides the key. ■ We observe the basic purposes of APA to be two-fold, namely, to provide in the context of a multi-agency control and supervision over widely varied business and professional enterprises and activities a standard and uniform procedure whereby those

---

[1]The Supreme Court has suggested, moreover, that the court's right to interpret need not depend on the presence of an "ambiguity." Rather, " '[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole.' " (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593], citing *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

affected by the controls may be heard; and second, to provide a repository accessible to the public in which general administrative rules and regulations may be found, thus avoiding secrecy.

Did the Legislature intend that these purposes would be served by submitting the rules and regulations under consideration to the procedures of APA? Our reading of both APA and the applicable provisions of the Penal Code discloses no suggestion of an intent that those most directly affected by defendants' rules and regulations, namely, the prisoners and parolees themselves, either be consulted prior to the adoption of the rules and regulations, or that they be assembled and transported to hearings so that they might participate therein and their views made known. In reference to the second broad purpose of APA, i.e., its service in assuring a repository of rules and regulations accessible to the public and thus preventing concealment, we find several statutes particularly relevant. As previously noted, Penal Code section 2080 requires each prisoner to receive "[a] copy of the rules and regulations prescribing the duties and obligations of prisoners," and Penal Code section 6025.5 requires that defendants' regulations be filed with the Board of Corrections. Government Code section 1227 confers upon any citizen the right to inspect "public records and other matters in the office of any officer , . . ." It is clear that defendants' regulations are public records, and thus open to inspection by any citizen.

Since the purposes of APA are fulfilled by other and independent provisions of law, it may reasonably be inferred that the Legislature did not intend to superimpose separate and unnecessary statutory procedures designed to meet the same purposes and objectives.

■ We conclude from the foregoing that defendants' rules and regulations are embraced within the exception defined by Government Code section 11380, subdivision (a)(3), and are thus beyond the purview of APA.

Further, a well-established principle of statutory construction impels us to our conclusion herein. The 1944 legislation establishing the department and the Authority, and particularly Penal Code section 5058, as previously noted, constituted a legislative enactment of specific application to the penal and correctional areas. As such it may be described as a special statute particularly addressed to such field. The subsequent legislation in 1947 enacting APA, on the other hand, is of general application.

It establishes both procedures for the promulgation of rules and administrative adjudication to a myriad of state agencies whose regulatory powers encompass a broad spectrum of the business and professional activity in the state. It may fairly be described as a general act.

The applicable rule of construction in such an instance has been described by the Supreme Court in the following manner: " 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication.' (*People* v. *Breyer,* 139 Cal. App. 547, 550 [34 P.2d 1065]; *Riley* v. *Forbes,* 193 Cal. 740, 745 [227 P. 768].)" (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) ▇ More recently the court has expressed the same rule in somewhat different language: "Also of importance here is the rule that where the same subject matter is covered by inconsistent provisions, one of which is special and the other general, the special one, whether or not enacted first, is an exception to the general statute and controls unless an intent to the contrary clearly appears." (*Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377]; see also *Lacy* v. *Orr* (1969) 276 Cal.App.2d 198, 201-202 [81 Cal.Rptr. 276], and cases cited therein, holding that the general adjudicatory hearing provisions of the Administrative Procedure Act yield to certain special adjudicatory hearing procedures of the Vehicle Code relating to driver's licenses.) A more accurate "harmonizing" of the two acts results, in our view, from treating the special act as an exception to the general.

Finally, our construction of the statutes involved herein is reinforced as well by a long-standing administrative interpretation which has considered the Administrative Procedure Act inapplicable to appellants. Such administrative interpretation, while in and of itself not controlling, is significant. (See 2 Sutherland, Statutory Construction (3d ed.) § 5107.)

▇ We hold that the provisions of the Administrative Procedure Act relating to procedure for adoption of rules and regulations (Gov. Code, §§ 11371-11445) are not applicable to the appellants.

The judgment and orders are reversed. The petition for writ of super-

sedeas and/or prohibition is dismissed and the stay order of this court previously issued will remain in effect until the remittitur is filed in the superior court.

Friedman, J., and David, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 19, 1973. Tobriner, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.