[No. A056320. First Dist., Div. One. Dec. 30, 1992.]

DRIVING SCHOOL ASSOCIATION OF CALIFORNIA, Plaintiff and Appellant, v.
SAN MATEO UNION HIGH SCHOOL DISTRICT, Defendant and Respondent.

1514

COUNSEL

Gerald N. Hill for Plaintiff and Appellant.

Shupe & Finkelstein and Diane E. Finkelstein for Defendant and Respondent.

OPINION

NEWSOM, J.—Driving School Association of California (hereafter Driving School) appeals from a judgment dismissing a petition for writ of mandate to compel San Mateo Union High School District (hereafter School District) to desist from charging high school students fees for driver training classes offered in its adult school and to refund fee payments that it has received.

Driving School, a nonprofit corporation representing licensed driving schools throughout California, including several schools that are based in San Mateo County or do substantial business in the county, filed the petition on July 16, 1991, and the School District responded by filing a demurrer for failure of the petition to allege standing or facts sufficient to constitute a cause of action. The trial court initially sustained the demurrer with leave to amend on the ground of lack of standing. After Driving School filed an amended petition elaborating facts relating to standing, the School District countered with a second demurrer. In a judgment entered December 12, 1991, the trial court sustained the demurrer without leave to amend and denied the petition, finding both that Driving School lacked standing in the case and that the School District had authority to charge a fee for the classes.

For many years, the School District had offered behind-the-wheel classes in driver training as an elective available to students who had completed or were enrolled in a safety education course, including classroom instruction in driver education. But when the state withdrew a subsidy for the high school driver training classes, the School District discontinued them in the spring semester of 1991. In place of the high school elective classes, the School District offered a course in driver training through its adult school for payment of a $190 fee reflecting the actual cost of instruction. The course was available to all members of the community above the age of 15 who paid the required fee but was offered at a time and place suited to the convenience of high school students. Most sections met after high school hours between 3:30 and 5:30 p.m. for four days a week over a three-week period. Two sections met for an intensive twenty-four hours of instruction during spring vacation. All classes were held either at Mills High School or San Mateo High School. The adult school did not offer high school credit for the class but rather a certificate of completion that would qualify minors to apply for a driver's license.

The School District estimated that about 350 students will enroll in the driver training class in the adult school during the entire school year as compared to about 2,000 students who annually took driver training as an

elective in high school. Driving School alleges that 90 percent of the students in the adult school courses were "high school students who did not hold a high school diploma." Without contesting or refining this allegation, the School District states only that "some" of the students in the adult school courses "were adults in the community."

 The appeal presents the threshold question whether Driving School has standing to file the petition for writ of mandamus. The controlling standard, expressed in Code of Civil Procedure section 1086, requires that the Driving School be "beneficially interested" in the outcome of the proceeding: "The writ must be issued, in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of *the party beneficially interested*." (Italics supplied.) Driving School's capacity as a trade association presents no difficulty. (3) " '[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " (*Brotherhood of Teamsters & Auto Truck Drivers* v. *Unemployment Ins. Appeals Bd.* (1987) 190 Cal.App.3d 1515, 1522 [236 Cal.Rptr. 78].) Driving School clearly meets the second and third criteria. The more difficult question is whether its members would otherwise have standing to sue in their own right.

 "The requirement that a petitioner be 'beneficially interested' has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276].) A petitioner must be able to plead and prove that it will be, or has been, aggrieved by the administrative order. (*Silva* v. *City of Cypress* (1962) 204 Cal.App.2d 374 [22 Cal.Rptr. 453]; *Grant* v. *Board of Medical Examiners* (1965) 232 Cal.App.2d 820, 827 [43 Cal.Rptr. 270].)

 The peculiarity of the present case arises from the fact that Driving School does not challenge the School District's authority to offer driver training in the adult school but rather its authority to charge fees. Representing competitive private driving schools, it is not actually aggrieved by the fact that fees are charged for enrollment in the classes. Indeed, the fees lessen the degree of competition offered by the adult school; the School

District presented a far greater competitive threat when it offered driver training classes free of charge as an elective in high schools. Driving School's interest in the outcome of the proceeding is based obviously on the political calculation that, if the School District is barred from charging fees, it will cut back or abandon its adult school classes in driver training, thus reducing competition. But however transparent this political calculation may be, it has not been alleged and is inherently incapable of proof. The courts cannot inquire into the probable political motivations of a legislative body.

 The courts have recognized, however, a public interest exception to the requirement of a beneficial interest: " ' "[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' [Citation.] The exception promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right. [Citation.] It has often been invoked by California courts." (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256]; see, e.g., *Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 440 [261 Cal.Rptr. 574, 777 P.2d 610]; *Hollman* v. *Warren* (1948) 32 Cal.2d 351, 357 [196 P.2d 562]; *Bd. of Soc. Welfare* v. *County of L.A.* (1945) 27 Cal.2d 98, 100-101 [162 P.2d 627].

 "The exercise of jurisdiction in mandamus rests to a considerable extent in the wise discretion of the court." (*Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 457 [85 Cal.Rptr. 809, 467 P.2d 537].) Some courts have refused to invoke the public interest exception unless "the purpose of the writ is enforcement of a clear public duty and the public interest would suffer greatly from a failure to perform such duty." (*Braude* v. *City of Los Angeles* (1990) 226 Cal.App.3d 83, 89 [276 Cal.Rptr. 256]; *McDonald* v. *Stockton Met. Transit Dist.* (1973) 36 Cal.App.3d 436, 440 [111 Cal.Rptr. 637]; *Fuller* v. *San Bernardino Valley Mun. Wat. Dist.* (1966) 242 Cal.App.2d 52, 57 [51 Cal.Rptr. 120].) Other decisions state that the requirements of standing will merely be " 'relaxed' " where "the question is one of public, as opposed to private, interest, and petitioner seeks performance of a public duty . . . ." (*American Friends Service Committee* v. *Procunier* (1973) 33 Cal.App.3d 252, 256 [109 Cal.Rptr. 22], disapproved on other grounds in *Engelmann* v. *State Bd. of Education* (1991) 2 Cal.App.4th, 47, 59 [3 Cal.Rptr.2d 264]; *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724].)

In applying the public interest exception, *Bd. of Soc. Welfare* v. *County of L.A.*, *supra*, 27 Cal.2d 98, took into consideration the burden that would

otherwise fall on a class of plaintiffs ill-prepared to bring the litigation. The State Board of Social Welfare sought to compel the county to issue duplicate warrants to three recipients of aid for the aged to replace warrants that the county had cancelled. The court observed, "[P]ersons who are members of such a class [of needy aged persons] are ordinarily financially, and often physically, unable to maintain such proceedings on their own behalf, and to deny to them the assistance of the welfare board under such circumstances would tend to defeat the purpose of the legislation which seeks to provide for them during needy old age." (*Id.* at p. 100.)

■■■ Driving School here seeks a writ commanding the school district (1) "to cease and desist from charging for driving training classes for high school students under the age of 18" and (2) "to return payments received from such minors beginning Fall, 1990 . . . ." We conclude that the trial court acted within its discretion in ruling that Driving School lacked standing to compel the School District to return payments received from minors enrolled in driver training classes at the adult school. Driving School has no beneficial interest in the refund of tuition payments, and the issue of the School District's obligation to make the refund does not involve a question significantly affecting the public interest. We hold, however, that Driving School had standing under the public interest exception to seek a writ compelling the School District to desist from charging high school students tuition for the driver training classes in the adult school. The question of the School District's authority to charge the tuition affects the "public as opposed to private, interest" and concerns "performance of a public duty." (*American Friends Service Committee* v. *Procunier, supra,* 33 Cal.App.3d 252, 256.) Moreover, unless Driving School is given standing to raise the issue, it will be effectively removed from judicial review. High school students who take this brief 24-hour class are unlikely to have the financial resources or the economic interest necessary to maintain the protracted litigation necessary to test the School District's authority to charge tuition for the class.

Before addressing the issue on appeal, it must be placed within the broader statutory and regulatory context. California law distinguishes between driver education and driver training. Driver education is a required high school course of study; it must include instruction complying with State Department of Education guidelines (Cal. Code Regs., tit. 5, § 10020), offered "within the regular schoolday, and within the regular academic year" (Ed. Code, § 51851, subd. (b)),[1] which is "designed to develop a knowledge of the provisions of the Vehicle Code and other laws of this state relating to

---

[1]All citations are to the Education Code unless otherwise stated.

the operation of motor vehicles, a proper acceptance of personal responsibility in traffic, a true appreciation of the causes, seriousness and consequences of traffic accidents, and to develop the knowledge and attitudes necessary for the safe operation of motor vehicles." (§ 51220, subd. (j).)

Driver training, which is described in section 51852 as the "laboratory phase of driver education," involves behind-the-wheel driving instruction, ordinarily provided in a dual-control automobile with a qualified instructor. Both public high schools and licensed driving schools are authorized to provide driver training classes complying with detailed regulatory requirements. (§ 51850; Veh. Code § 12507; Cal. Code Regs., tit. 13, § 400.00 et seq.) A school district has discretion whether or not to offer courses in driver training as an elective in high schools within its jurisdiction; but if the courses are offered, section 41902 provides that "no tuition shall be charged."

Eligibility to enroll in a driver training class is linked to enrollment in a driver education course or knowledge of the subject matter of the course. With respect to public high schools, section 51850 provides "that no pupil shall be permitted to enroll in automobile driver training unless such pupil is presently enrolled in a course of instruction in automobile driver education, or has satisfactorily completed such course." Before enrolling in the driver training course, a high school student must apply for a student license to the school principal, who may issue the license "whenever in his opinion the applicant is qualified to take the course of instruction and has filed a proper application therefor." (Veh. Code, § 12651; see also Veh. Code, § 12650; Cal. Code Regs., tit. 5, § 10041.) For their part, licensed driving schools may also offer courses both in driver education and driver training (Cal. Code Regs., tit. 13, §§ 100.45 and 400.25), and may secure authorization to issue student licenses to qualified applicants. (Cal. Code Regs., tit. 13, § 401.12)

While anyone may presumably benefit from driving instruction, minors between the age of 16 and 18 have special motivation to take driver education and driver training classes. Vehicle Code section 12507 provides that such minors may apply for a driver's license only after "satisfactory completion" of these prescribed courses.

█ The possibility of offering driver training in an adult school calls for examination of two overlapping statutory schemes. Section 52500 et seq. gives school districts the power to establish "adult schools;" section 51810 et seq. authorizes the districts to offer "community service classes." Both adult schools and community service classes are open generally to adults but may

admit minors at the discretion of the governing boards. (§§ 51811 and 52500.) In identical language, the applicable statutes authorize both educational programs to offer instruction in "civic, vocational, literacy, health, homemaking, technical and general education . . . ." (§§ 51810 and 52501.) Though the two statutory schemes include different financing provisions and certain other distinctions, it is immaterial for many purposes whether a course is offered under the authority of one or the other or both. According to the School District's Director of Adult Education, the School District regards a certain category of courses offered by its adult school as community service classes.

We consider that the authority of adult schools and community service classes to offer driver training courses can be implied from the statutory authority to offer instruction in "general education." By making driver education a required high school course, the Legislature has viewed it as a necessary part of education for responsible citizenship in a society dependent on automobiles; as the "laboratory phase of driver education," driver training should also be regarded as a sufficiently basic form of citizenship education to qualify as "general education." In addition, authority to offer driver training courses can be implied from the general authority of the School District under section 35160 which provides: "[T]he governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."

Section 52511, subdivision (b), contains specific statutory recognition of the authority of adult schools to offer the driver training courses prescribed by state law. While dealing with the question of instruction outside district boundaries, the statute states: "[W]henever the governing board of a school district *offering automobile driver training in an adult school or classes for adults* determines that such training cannot be conducted effectively wholly within the district's boundaries, it may cause the training to be conducted outside the boundaries of the district." (Italics supplied.) The reference to "classes for adults" will ordinarily also apply to community service classes. The term "classes for adults" is defined by section 8510, subdivision (b), to mean "classes without a college grade level designation organized primarily for persons 18 years of age or older."

The specific issue on appeal—the authority of the adult school to charge high school students fees for driver training classes—requires consideration, first, of statutory authority to charge fees in adult schools and community

service classes and, second, the "free school" guarantee of article IX, section 5, of the California Constitution.

The statutory scheme establishing adult schools authorizes the School District to charge fees only for enrollment of adult students who are not receiving high school credit. Section 52612 provides that "an adult enrolled in a class for adults may be required by the governing board of the district maintaining the class to pay a fee for the class. . . . No fee charge shall be made for a class designated by the governing board as a class for which high school credit is granted . . . ." While the School District argues that this language should be read as generally authorizing fees for all students in adult schools, both the legislative history and the present statutory context favor a more literal interpretation—the statutory authority to impose fees applies to adult students but not to minor students. The provision derives from the Education Code of 1943. Former section 8991, the ancestor of current legislation pertaining to adult schools, then provided that the school district "may establish and maintain, in connection with any high school under its jurisdiction special day and evening classes, for the purpose of giving instruction to such minors or adults as in the judgment of the governing board of the districts may profit by the instruction." (Stats 1943, ch. 71, art. 3, p. 488.) Former section 9191, the predecessor of section 52612, provided: "Adults enrolled in special day or evening classes . . . may be required by the governing board of the district to pay a tuition . . . . ." (Stats 1943, ch. 71, art. 13, p. 494.) Since "special day or evening classes" were open both to adults and minors, it appears that the Legislature intended to authorize tuition charges for adult students and not minor students.

Today section 52612 must be read in the context of section 52610 and 52610.5. For purposes of financing from the state school funds, section 52610 requires separate reporting of adults and defines an adult as "a person 18 years of age or older or a person who is not concurrently enrolled in a regular high school program." Section 52610.5 gives minors who are pregnant or active parents the right "to enroll in any adult education course . . . ." In this statutory context, the use of the term "adult" in section 52612 has implications relating to school financing and the right of minors with family responsibilities to attend adult schools free of charge. We think that consistency among these statutes can best be achieved by reading the term as referring narrowly to those students over the age of 18.

In contrast, section 51815 pertaining to community service classes gives the School District unqualified authority to charge student fees. The statute

provides: "Governing boards may expend from the general fund of the district any money which is budgeted for community services to establish and maintain community service classes and may charge student fees not to exceed the cost of maintaining such classes . . . ." It should be noted, however, that the School District may not charge fees if high school credit is given for the class. Under section 51813, the school board does not have authority to grant high school credit for community service courses. Such credit is authorized only for adult school courses under section 52507 and, as we have seen, section 52612 prohibits fees in adult school classes for which high school credit is granted.

Driving School argues that section 41902 carves an exception to 51815, prohibiting any tuition charges for driver training classes. We read section 41902, however, as applying only to high school classes in driver training. The statute appears in article 12, division 3, part 24, of the Education Code which concerns "allowances"—a form of state subsidy—for the cost of driver training. Section 41902 provides: "Allowances by the Superintendent of Public Instruction shall be made only for driver training classes maintained in accordance with the rules and regulations as set forth by the State Board of Education. [¶] Driver training may be made available to eligible students and, if made available, no tuition shall be charged." In general, the provisions of article 12 refer only to high schools and have no conceivable application to adult schools. The grant of allowances is unquestionably limited to high school classes in driver education. It is most reasonable to construe section 41902 as referring only to the high school classes in driver training that qualify for such allowances.

Although we conclude that section 51815 may authorize a school district to charge fees for enrollment in a driver training offered as a community service class in an adult school, the question remains whether the driver training program actually offered by the School District is consistent with the "free school" guarantee of the California Constitution. Article IX, section 5, provides: "The Legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district . . . ." The leading case construing the provision, *Hartzell* v. *Connell* (1984) 35 Cal.3d 899 [201 Cal.Rptr. 601, 679 P.2d 35], concerned the closely analogous question whether a school district can charge fees for participation in extracurricular activities. The court construed the free school guarantee broadly as extending to all activities that "constitute an integral component of public education." (*Id.* at p. 909.) This broad interpretation, the court reasoned, was required by the legislative purpose of the guarantee to foster "the making of good citizens." (*Ibid.*) Holding that the extracurricular activities came within the free school guarantee, the court found that they were

" 'educational' in character" and that they were offered as an integral part of the public education provided to high school students. (*Id.* at p. 911.)

Rejecting an argument that a fee-waiver policy satisfied the free school guarantee, the *Hartzell* court made certain observations pertinent to the present case. "The free school guarantee," it noted, "lifts budgetary decisions concerning public education out of the individual family setting and requires that such decisions be made by the community as a whole. Once the community has decided that a particular educational program is important enough to be offered by its public schools, a student's participation in that program cannot be made to depend upon his or her family's decision whether to pay a fee or buy a toaster." (35 Cal.3d at pp. 911-912.) The court conceded that its decision might force the school "to drop some extracurricular activities," thus producing "the anomalous result of reducing the number of educational opportunities available to students." But it held nevertheless that the constitution demanded that "access to public education" be a right enjoyed equally by all (*id.* at p. 913); the availability of educational programs must be determined at the community level "through the political process" without regard for individual "families' ability or willingness to pay fees or request special waivers." (*Ibid.*)

In applying the *Hartzell* decision, we face the initial question whether driver training classes serve an educational purpose like that of extracurricular activities. We note that by declining to extend the free school guarantee to school bus transportation, the Supreme Court recently made clear that, as construed in *Hartzell*, the guarantee applies only to activities that are " 'educational' in character." (*Arcadia Unified School Dist.* v. *State Depart. of Education* (1992) 2 Cal.4th 251, 264 [5 Cal.Rptr.2d 545, 825 P.2d 438].) ■ In our view, the educational character of an activity should be determined in light of the purpose of the free school guarantee of preparing youth for citizenship, and the question whether an activity corresponds to this legislative purpose should be resolved in a manner consistent with the values and judgments implicit in our system of law.

■ The demands of citizenship have changed from those that could have been envisioned at the time the free school guarantee was enacted in the Constitutional Convention of 1878-1879. Today, in a society dependent on automotive transportation, the ability to drive safely and skillfully can reasonably be regarded as an aspect of good citizenship. The Legislature unquestionably has adopted this position by requiring courses in driver education and authorizing elective courses in driver training in all public

schools. The legislative treatment of the subject obliges us to conclude that driver training is educational in character.

Accepting the educational character of driver training, we must consider whether it meets the *Hartzell* test of being "an integral component" of the public education offered high school students within the school district. In this connection, it is relevant that, like the extracurricular activities in *Hartzell*, driver training supplements a course given for credit toward graduation, i.e., driver education. As the laboratory phase of driver education, the subject of driver training has an inherent connection with driver education. Moreover, the procedural requirements for issuing student licenses assure that there will be a link between enrollment in a driver training course and either prior enrollment in, or knowledge of the subject matter of, driver education.

But we do not consider this inevitable connection between driver education and driver training to be decisive. A civic music program may enrich the musical instruction of high school students without in any way becoming part of public education. Rather, in our view, the critical considerations are that the driver training classes here were offered after school hours or during spring vacation, on high school premises, to classes composed overwhelmingly of high school students. Under these circumstances, the classes were an integral component of the public education offered to high school students. It is true that the classes were conducted by adult school personnel, rather than by high school personnel as were the extracurricular activities in the *Hartzell* decision. But the role of adult school personnel, though highly relevant, is not in itself significant enough to distinguish the program from the facts of the *Hartzell* decision.

We are mindful that the probable consequence of the finality of our holding would be to cause the School District either to drop driver training from the adult school curriculum or to offer classes less directly adapted to the convenience and needs of high school students. But similar anomalous consequences were probable in the *Hartzell* case. Disregarding considerations of financial expediency, the Supreme Court refused to compromise the rigorously democratic character of the free school guarantee, holding that public education must be offered equally to all and that the content of this education must reflect decisions made at the community level through the political process rather than the student's financial resources. The same principles apply here.

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion. Costs to Driving School.

Strankman, P. J., and Dossee, J., concurred.

A petition for a rehearing was denied January 28, 1993.