89 Cal.Rptr.2d 215 (1999)
75 Cal.App.4th 327
SACRAMENTO COUNTY FIRE PROTECTION DISTRICT, Plaintiff and Appellant,
v.
SACRAMENTO COUNTY ASSESSMENT APPEALS BOARD II, Defendant and Respondent,
Aerojet-General Corporation et al., Real Parties in Interest and Respondents.
No. C026451.
Court of Appeal, Third District.
September 29, 1999.
Rehearing Denied October 27, 1999.
Review Denied December 15, 1999.
*216 Byron D. Athan, San Ramon, for Plaintiff and Appellant.
*217 Allan D. Saxe, for 67 California Cities as Amici Curiae on behalf of Plaintiff and Appellant.
Robert A. Ryan, Jr., County Counsel, and John T. Seyman, Deputy County Counsel, for Defendant and Respondent Assessment Appeals Board and for Real Parties in Interest and Respondents Roger Fong, et al.
Ajalat, Polley & Ayoob, Richard J. Ayoob, Charles R. Ajalat, Terry L. Polley, Los Angeles, Lewis, D'Amato, Brisbois & Bisgaard, Claudia J. Robinson, and Jose N. Uranga, Sacramento, for Real Party in Interest and Respondent Aerojet-General Corp.
DAVIS, J.
In this appeal from a demurrer sustained without leave to amend, we conclude that a fire protection district lacks standing to seek a writ of mandate against a county assessment appeals board after the board upheld a lower assessed valuation for a taxpayer's real property. Accordingly, we affirm.

BACKGROUND
Because this is a demurrer proceeding, we accept as true the allegations of the petition for writ of mandate/administrative mandate. (Carsten v. Psychology Examining Com. (1980) 27 Cal.3d 793, 795, 166 Cal.Rptr. 844, 614 P.2d 276 (Carsten).)
The petition alleges as follows. The taxpayer in this matter, Aerojet-General Corporation (Aerojet), owns nearly 10,000 acres of land and improvements in Sacramento County.
Around 1980, substantial contamination was discovered on Aerojet's property. Because of the contamination, Aerojet sought to reduce its assessed property valuation for the years 1988-89 through 1995-96. After a hearing in 1996, the Sacramento County Assessment Appeals Board II (the Board) accepted a stipulation between Aerojet and the Sacramento County Assessor (the Assessor) which reduced Aerojet's assessed valuation for each of those years from roughly $250 million to roughly $50 million.
The Board's decision to accept the stipulation resulted in the Sacramento County Fire Protection District (the District), a property tax recipient, having to refund approximately $1.5 million in previously collected (and spent) tax dollars.
The District filed a petition against the Board (with the Assessor and Aerojet as the real parties in interest), seeking a writ of mandate (Code Civ. Proc., §§ 1084, 1085) or a writ of administrative mandate (Code Civ. Proc., § 1094.5). The District alleges (1) that the Board violated Revenue and Taxation Code section 1607 by failing to set forth in the stipulation the facts justifying a reduced valuation, and (2) the stipulation uses an improper valuation method.
In demurrer proceedings, the District's petition was dismissed after the trial court concluded the District did not have standing to bring the action.

DISCUSSION
The issue is whether the District has standing to bring this action. We conclude it does not.
Standing to sue goes to the existence of a cause of action; that is, whether a plaintiff (or a petitioner) has a right to relief in court. (Pillsbury v. Karmgard (1994) 22 Cal.App.4th 743, 757-758, 27 Cal. Rptr.2d 491; American Alternative Energy Partners II v. Windridge, Inc. (1996) 42 Cal.App.4th 551, 559, 49 Cal.Rptr.2d 686.) A demurrer can be used to challenge standing. (See Carsten, supra, 27 Cal.3d at p. 796, 166 Cal.Rptr. 844, 614 P.2d 276.)
Ordinarily, a petitioner seeking a writ of mandate or administrative mandate must show that he or she is beneficially interested in the outcome. (Code Civ. Proc., § 1086; Grant v. Board of Medical Examiners (1965) 232 Cal.App.2d 820, 827, 43 Cal.Rptr. 270; see 8 Witkin, Cal. Procedure (4th ed. 1997) Extraordinary Writs, § 297, p. 1102.) "Beneficially interested" generally means the petitioner has "some special interest to be served or some particular *218 right to be preserved or protected over and above the interest held in common with the public at large." (Carsten, supra, 27 Cal.3d at p. 796, 166 Cal.Rptr. 844, 614 P.2d 276.) As Witkin explains it: "The [mandate] statute speaks of compelling the respondent to perform a `duty,' ... on petition of `the party beneficially interested.' (C.C.P. [Code of Civil Procedure sections] 1085, 1086.) The terms are suggestive of the basic dual requirements for mandamus: (1) a clear, present (and usually ministerial) duty on the part of the respondent; (2) a clear, present, and beneficial right in the petitioner to the performance of that duty." (8 Witkin, Cal. Procedure, supra, Extraordinary Writs, § 72, p. 853, and cases cited therein.)[1]
In its petition, the District alleges the Board failed to have the stipulation between Aerojet and the Assessor set forth the facts justifying a reduced valuation, and the stipulation uses an improper valuation method. According to the District's petition, it is beneficially interested because the "stipulation reducing the valuation of Aerojet's land requires the refund of millions of dollars previously collected and spent in providing essential public services. Each taxing agency involved [including the District] will have to return funds budgeted for current services and thereby degrade the level of future services."
Thus, the District claims it is "beneficially interested" in the assessed valuation assigned to a particular piece of property and has standing to assert that interest in a mandate action. In a related vein, the District claims it has standing in mandate to contend the Board wrongly exercised its judgment or discretion in reducing the assessed valuation of Aerojet's property. The District is mistaken in both respects.
With respect to the assessed valuation assigned to a particular piece of property, the District does not have "some special interest to be served or some particular right to be preserved or protected over and above the interest [it holds] in common with the public at large." (Carsten, supra, 27 Cal.3d at p. 796, 166 Cal. Rptr. 844, 614 P.2d 276.) The District and its residents, and indeed the public at large, share a common interest in seeing that the District's public function is effectively funded.
This point is illustrated by comparing the position of the District to that of Los Angeles County in County of L.A. v. Tax Appeals Bd. No. 2 (1968) 267 Cal.App.2d 830, 73 Cal.Rptr. 469. In County of L.A., the Los Angeles County Tax Appeals Board reduced the assessed valuation of a particular piece of real property. Los Angeles County itself was allowed to challenge that reduced assessment in an administrative mandate action because it was statutorily required to appear, and did appear, before the board at the administrative hearing sought to be reviewed, and it was the responsible governmental authority regarding the property tax base. (267 Cal.App.2d at pp. 833-834, 73 Cal.Rptr. 469; see also Jefferson Union Sch. Dist. v. City Council (1954) 129 Cal.App.2d 264, 267, 277 P.2d 104 [a school district could sue a city, in a mandate action, over the city's proposed annexation of property; the school district was "beneficially interested" because the proposed annexation would "automatically remove the annexed territory from the school district and from its tax rolls"; italics added].) The District has no right to appear in the proceedings before the Board, it did not formally appear in those proceedings, and it is merely *219 a property tax recipient rather than an ad valorem property tax authority or overseer. (See Gov.Code, § 53978, subd. (a) [the District may determine and propose for adoption a special tax for fire protection and prevention, but not an ad valorem property tax]; see also County of Sacramento v. Assessment Appeals Bd. No. 2 (1973) 32 Cal.App.3d 654, 673, fn. 6, 108 Cal.Rptr. 434(County of Sacramento) [commenting on the difficulties that could ensue for the tax system if the agencies for which the county collects taxes were deemed "`interested part[ies]'" who could demand review of local board of equalization proceedings].)
With respect to the Board's exercise of judgment in reducing Aerojet's assessed valuation, the "duty/right" aspect of mandate is implicated. In this respect, however, the District does not present a clear, present and beneficial right to the performance of a duty on the Board's part. (Code Civ. Proc., §§ 1085, 1086; 8 Witkin, Cal. Procedure, supra, Extraordinary Writs, § 72, p. 853, and cases cited therein.) Although the District contends the Board committed a procedural lapse by failing to have the stipulation between Aerojet and the Assessor set forth sufficient facts regarding valuation, the District's position, at its core, is that the Board wrongly exercised its judgment or discretion in reducing the assessed valuation of Aerojet's property. Mandate is usually an inappropriate vehicle to enforce an allegedly wrongful exercise of a discretionary duty. (See 8 Witkin, supra, Cal. Procedure, Extraordinary Writs, § 72, p. 853 [mandate requires "a clear, present (and usually ministerial) duty on the part of the respondent"].) More significantly, the District has neither a "vested right" nor a "property interest" in a particular assessed valuation for particular property. (See San Miguel Consolidated Fire Protection Dist. v. Davis (1994) 25 Cal. App.4th 134, 143-145, 30 Cal.Rptr.2d 343 [a fire protection district has no standing to challenge state legislation reallocating funds from the district to county education accounts because, as against the state, the district has no vested right or property interest in the funds].)
We conclude the District cannot assert standing as a beneficially interested party.
"The courts have recognized, however, a public interest exception to the requirement of a beneficial interest: `[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [petitioner] need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced. [This] exception promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.'" (Driving Sch. Assn. of Cal. v. San Mateo Union High Sch. Dist. (1992) 11 Cal.App.4th 1513, 1518, 14 Cal.Rptr.2d 908, quoting Green v. Obledo (1981) 29 Cal.3d 126, 144, 172 Cal.Rptr. 206, 624 P.2d 256, some internal quotation marks omitted; see also Nowlin v. Department of Motor Vehicles (1997) 53 Cal.App.4th 1529, 1537-1538, 62 Cal.Rptr.2d 409.)
The District contends that even if it is not "beneficially interested," it has standing because it meets the public interest exception to that requirement by "seek[ing] to procure enforcement of the Board's public duty to comply with the provisions of the Revenue and Taxation Code relating to valuation of real property and the acceptance of stipulations regarding value." We disagree.
The policy underlying the public interest exception "may be outweighed in a proper case by competing considerations of a more urgent nature...." (Green v. Obledo, supra, 29 Cal.3d at p. 145, 172 Cal.Rptr. 206, 624 P.2d 256; see Carsten, supra, 27 Cal.3d at pp. 797-799, 166 Cal.Rptr. 844, 614 P.2d 276.) This is *220 such a case. Similar to the petitioner in Carsten, the District here "possesses none of the virtues discussed [in the cases invoking the public interest exception], and has noteworthy detriments, for entitlement" to that exception. (27 Cal.3d at p. 797, 166 Cal.Rptr. 844, 614 P.2d 276 [for example, in Carsten, the court concluded that policy reasons militated against applying the public interest exception to an administrative board member who filed suit to challenge the legality of action taken by her own board].)
As this court recognized in County of Sacramento, supra, 32 Cal.App.3d 654, 108 Cal.Rptr. 434, if "any of the agencies for which the county collects taxes is an `interested party' that may demand [mandamus] review of the [local] board of equalization proceedingseven if all other taxing agencies may be satisfiedand without any strict time limitations, the entire taxing process could be impeded or disrupted." (Id. at p. 673, fn. 6, 108 Cal.Rptr. 434.)
There is no need to risk such chaos, because there is no pressing need for the District to have standing here. This is not a situation where the issue raised by the District will be removed from judicial review if standing is denied. (See Bd. of Soc. Welfare v. County of L.A. (1945) 27 Cal.2d 98, 100, 162 P.2d 627; Driving Sch. Assn. of Cal. v. San Mateo Union High Sch. Dist, supra, 11 Cal. App.4th at pp. 1518-1519, 14 Cal.Rptr.2d 908.) Countieswhich have an interest in preserving their property tax basescan sue assessment appeals boards to ensure those boards have followed the law in determining assessed valuations. (See County of San Diego v. Assessment Appeals Bd. No. 2 (1983) 148 Cal.App.3d 548, 553, 195 Cal.Rptr. 895; County of Los Angeles v. Tax Appeals Bd. No. 2, supra, 267 Cal.App.2d at pp. 833-834, 73 Cal. Rptr. 469; County of Sacramento, supra, 32 Cal.App.3d at pp. 671-674, 108 Cal. Rptr. 434; County of Orange v. Orange County Assessment Appeals Bd. (1993) 13 Cal.App.4th 524, 16 Cal.Rptr.2d 695; see also Gov.Code, § 25303.) If the county is unwilling to help, the District can seek assistance from the State Board of Equalization, which has a direct oversight role in this regard. (Gov.Code, § 15606, subd. (h) [the State Board of Equalization can sue to compel an assessor or any county tax official to comply with any provision of law governing the assessment or taxation of property].) Additionally, cities have certain legal protections in this arena as well. (See e.g., Rev. & Tax Code, §§ 4986, subd. (b); 5146; City of San Jose v. Carlson (1997) 57 Cal.App.4th 1348, 67 Cal.Rptr.2d 719 [city suing county assessor over assessor's tax determination].) Therefore, even if the District is denied standing to challenge the Board's decision to reduce Aerojet's property valuation, that issue is still judicially reviewable. (Cf. Driving Sch. Assn. of Cal. v. San Mateo Union High Sch. Dist., supra, 11 Cal.App.4th at p. 1519, 14 Cal.Rptr.2d 908 ["[U]nless Driving School is given standing to raise the issue, it will be effectively removed from judicial review"]; cf. also Central Delta Water Agency v. State Water Resources Control Bd. (1993) 17 Cal.App.4th 621, 630-631, 21 Cal.Rptr.2d 453 and Selinger v. City Council (1989) 216 Cal.App.3d 259, 270-271, 264 Cal.Rptr. 499, as discussed in Native American Heritage Com. v. Board of Trustees (1996) 51 Cal.App.4th 675, 684, 59 Cal.Rptr.2d 402.)
Nor can the District assert standing on the public interest-related ground of being a governmental entity charged with enforcing a particular statute. For example, in People ex rel. Dept. of Conservation v. Triplett (1996) 48 Cal.App.4th 233, 55 Cal. Rptr.2d 610, the state Department of Conservation sued a county assessor, claiming the county improperly calculated a fee to cancel a Williamson Act contract (Gov. Code, § 51200 et seq.; preservation of agricultural land with low tax valuation). The Triplett court concluded the state had standing on two grounds, one of which involved the state's "charge with enforcing the Williamson Act." (48 Cal.App.4th at p. 254, 55 Cal.Rptr.2d 610.) The District *221 cannot use this principle as a basis of standing. It is not charged with enforcing the property tax scheme.
Finally, the District relies on Revenue and Taxation Code section 1615 (section 1615) as a basis of standing. Section 1615 provides: "No action or proceeding shall be brought in any court on behalf of any governmental officer, agency or entity to review a decision of the county board of equalization or an assessment appeals board unless such action or proceeding is commenced within six months from the date the board makes its final determination."
The District focuses on the section 1615 phrase "any governmental officer, agency or entity," and argues the phrase constitutes a grant of authority to all governmental entities. Section 1615, however, is a statute of limitations, not a grant of authority to sue. Section 1615 simply applies its statute of limitations to those governmental officers, agencies or entities who do have standing to sue. This is borne out by section 1615's legislative history, which states: "This Bill subjects government agencies to the same six months requirement. This is argued as a fairness issue; if the taxpayer has to file within six months, then why shouldn't the county?" (Sen. Rules Cmte., Third Reading, July 19, 1989, p. 3; Sen. Cmte. on Revenue and Taxation, July 19, 1989, pp. 1-2.)[2]
There is simply no statutory, decisional, or policy basis on which to grant the District standing here. And this may be with good reason. The District's interests in this regard are generally protected by other entities, and to grant standing to the District (and inevitably to its fellow districts) could lead to chaos in the tax system. (See County of Sacramento, supra, 32 Cal.App.3d at p. 673, fn. 6, 108 Cal. Rptr. 434.) Chaos would not redound to anyone's benefit, including the District's.[3]
We emphasize the narrowness of our holding. All we have concluded is that a special district, as merely a property tax recipient with no right to appear before the tax assessment board, has no standing to challenge the assessment board's decision to reduce the assessed valuation of a particular piece of property. In other words, the question of standing depends on the precise relationship of the district to the property at issue. For example, special districts have been allowed to sue counties or county officials when the county has allegedly levied taxes on the district's tax-exempt property. (See Glenn-Colusa Irr. Dist. v. Ohrt (1939) 31 Cal. App.2d 619, 620-621, 88 P.2d 763; Oakdale Irr. Dist. v. County of Calaveras (1955) 133 Cal.App.2d 127, 129, 283 P.2d 732; Rock Creek W. Dist. v. County of Calaveras (1955) 133 Cal.App.2d 141, 142-143, 283 P.2d 740.) And if, for example, a state statute directed a county to allocate specifically appropriated tax revenues to a district, the district would have standing to enforce the statute against a recalcitrant county. (Cf. Conlin v. Board of Supervisors (1893) 99 Cal. 17, 21, 33 P. 753.) Here, however, the District seeks only to challenge the assessed valuation assigned to a particular piece of property.
The judgment is affirmed.
BLEASE, Acting P.J., and SIMS, J., concur.
NOTES
[1] As noted, the traditional mandate requirement of "beneficially interested" applies to administrative mandate as well. (8 Witkin, Cal. Procedure, supra, Extraordinary Writs, § 297, p. 1102, and cases cited therein.) "Ordinarily, a party to the administrative proceeding has a sufficient interest to seek review of the decision." (Ibid.) The District was not a formal party to the proceedings before the Board. Nevertheless, as Witkin explains, "even a nonparty may seek review [via administrative mandate] where an order is being enforced against [it]." (Id. at pp. 1102-1103.)
[2] Aerojet has requested that we judicially notice the legislative history for section 1615, a copy of which Aerojet provided. We have secured our own copy of that legislative history, and therefore deny Aerojet's request.
[3] In an amicus brief, certain California cities are concerned that they and the District share an equivalence in the property tax system. They are not equivalent. As noted above, cities have been granted different protections in that system. Our decision concerns only the District's standing to challenge the assessed valuation of a particular piece of property, and does not set forth any views concerning the standing of other governmental entities or officials.