48 Cal.App.4th 233 (1996)
THE PEOPLE ex rel. DEPARTMENT OF CONSERVATION et al., Plaintiffs and Appellants,
v.
DAVID TRIPLETT, as Tax Assessor, etc., Defendant and Respondent; DIABLO GRANDE LIMITED PARTNERSHIP, Real Party in Interest and Respondent.
Docket No. F024360.
Court of Appeals of California, Fifth District.
August 8, 1996.
*237 COUNSEL
Daniel E. Lungren, Attorney General, Charles W. Getz IV, Assistant Attorney General, and Edna Walz, Deputy Attorney General, for Plaintiffs and Appellants.
*238 Michael H. Krausnick, County Counsel, and E. Vernon Seeley, Assistant County Counsel, for Defendant and Respondent.
Meyers, Nave, Riback, Silver & Wilson, Andrea J. Saltzman, Steven R. Meyers, David W. Skinner, Normoyle & Newman, Russell A. Newman and George A. Petrulakis for Real Party in Interest and Respondent.
OPINION
WISEMAN, J.
In this action, the State of California sues the Assessor of the County of Stanislaus and the private landowner real party in interest for money owed following an alleged improper calculation of a cancellation fee made pursuant to a decision to cancel a Williamson Act contract. We hold the State of California has standing to bring this action; the action is not barred for failure to exhaust administrative remedies; and the 180-day statute of limitations period contained within Government Code section 51286 does not apply.

FACTUAL AND PROCEDURAL HISTORY
On December 16, 1994, in the Stanislaus Superior Court, the People of the State of California (State) filed a first amended petition and complaint for writ of mandate, declaratory relief and damages. It named David Triplett, the Stanislaus County Assessor (Assessor) as the defendant, and Diablo Grande Limited Partnership (Diablo Grande) as the real party in interest (collectively, respondents). The suit alleged Douglas P. Wheeler, Secretary of the Resources Agency (hereafter Secretary and Agency, respectively), and the Department of Conservation (Department), were the relators on whose behalf the State (collectively, plaintiffs) had filed the action in order to enforce the California Land Conservation Act, more commonly called the Williamson Act.
The suit alleged the County of Stanislaus (County) had entered into a Williamson Act contract (WAC) (No. 72-1025) regarding land now owned by Diablo Grande.[1] The first cause of action for writ of mandate alleged that on May 21, 1993, Diablo Grande filed an application for a tentative cancellation on 5,070 acres of the land restricted by WAC No. 72-1025 for a *239 destination resort (resort parcel), including hotel/conference center, 2,000 homes, development of estate lots, golf course and clubhouse, winery, swimming and tennis club, and associated commercial and services uses.[2]
On September 8, 1993, the Assessor certified to the County Board of Supervisors (Board) that the cancellation value for the resort parcel was $3,750,000. To determine the cancellation value, the Assessor employed the comparable sales method, using six properties. Of these six properties, at the time of the sales, all six were devoted to open dry-land farming, and four of them were restricted under WAC's.
On October 27, 1993, the Board adopted a decision tentatively approving the Diablo Grande application. At the time pertinent here, the amount of the cancellation fee was set at 12.5 percent of the full cash value of the land as though it were free of the WAC at the time the land was appraised for cancellation. The cancellation fee was $468,750, representing 12.5 percent of the cancellation valuation certified by the Assessor.[3] By January 1995, the County had remitted the $468,750 cancellation fee to the State.
Plaintiffs alleged the Assessor abused his discretion and violated the Government Code because his cancellation valuation was on the resort parcel's restricted use as open dry-land farming instead of its current fair market value as a destination resort and residential estate project. Thus, plaintiffs alleged the cancellation fee established by the Board was unlawful, and injured plaintiffs in that it frustrated the purposes of the Williamson Act, which they are charged with enforcing, and the State suffered pecuniary loss because the cancellation fee is income to the State.
The same allegations were relied on to support plaintiffs' cause of action for declaratory relief.
*240 In their cause of action for damages under a constructive trust theory, plaintiffs alleged the State had provided subventions to the County to offset its loss of revenue stemming from entering into a WAC with a property owner. They further alleged the County had a fiduciary duty to the State in carrying out its duty under the Williamson Act to assess a cancellation fee in accordance with section 51283 and to transfer it to the State. As a result of the County's failure to lawfully discharge that duty, the State was unjustly deprived of money it was entitled to and Diablo Grande was unjustly enriched. Thus, a constructive trust was created whereby the County and Diablo Grande are jointly and severally liable for damages to the State by virtue of the breach of fiduciary duty and unjust enrichment.
The Assessor filed a demurrer to the complaint and requested judicial notice of several documentary exhibits. Diablo Grande also filed a demurrer and requested judicial notice of plaintiffs' motion for intervention filed in an action entitled Stanislaus Natural Heritage Foundation v. County of Stanislaus (Super. Ct. Stanislaus County, No. 301417), the order denying the motion, and the reporter's transcript of the hearing.[4]
After a hearing on the demurrers, the court filed an order sustaining the demurrers on the grounds (1) the action was barred by the 180-day statute of limitations pursuant to section 51286; (2) plaintiffs lacked standing to sue; and (3) plaintiffs failed to exhaust their administrative remedies.[5]
Following the filing of a judgment of dismissal, a timely notice of appeal was filed.

DISCUSSION

I. Section 51286 does not bar plaintiffs' action.

(1a) Plaintiffs contend the trial court erred by holding section 51286 provides the applicable statute of limitations for the instant action. Plaintiffs further contend that since section 51286 does not apply, the three-year statute as set forth in Code of Civil Procedure section 338, subdivision (a) *241 applies, because it pertains generally to "An action upon a liability created by statute, other than a penalty or forfeiture." Section 51286 provides:
"Any action or proceeding which, on the grounds of alleged noncompliance with the requirements of this chapter, seeks to attack, review, set aside, void, or annul a decision of a board of supervisors or a city council to cancel a contract shall be brought pursuant to Section 1094.5 of the Code of Civil Procedure.
"The action or proceeding shall be commenced within 180 days from the council or board order acting on a petition for cancellation filed under this chapter."
The language of section 51286, by its terms, refers only to actions of the Board and not to actions of the Assessor. Plaintiffs argue section 51286 does not apply to the instant challenge to the Assessor's actions in establishing a cancellation value as required by section 51283, subdivision (a), because review of the Assessor's valuation is no part of the Board's deliberations in determining whether to cancel the contract. In other words, plaintiffs contend they are not challenging whether the Board erred in determining to cancel the contract. They are only challenging whether the Assessor followed the provisions of the Williamson Act when it made the cancellation valuation. The Assessor counters by focusing on the language stating "[a]ny action [based] on the grounds of alleged noncompliance with the requirements of this chapter ... [¶] shall be commenced within 180 days...." The problem with this focus is that it leaves out critical language upon which appellants rely, i.e., that it applies only to an action which "seeks to attack, review, set aside, void, or annul a decision of a board of supervisors ... to cancel a contract...."
Diablo Grande contends the Assessor's cancellation valuation was an essential element of the Board's decision to cancel the contract. "As mandated by section 51283, the Board's determination of the cancellation fee was based on the Assessor's determination of the cancellation valuation and both determinations were made prior to (and as preconditions of) the Board's approval of the cancellation." As such, Diablo Grande concludes, an attack on the Assessor's cancellation valuation is an attack on the Board's decision to cancel the WAC, within the meaning of section 51286.

A. Rules of statutory construction.

In proceeding to determine the correct interpretation of section 51286, we are aided by certain general principles of statutory construction: "The fundamental purpose of statutory construction is to ascertain the intent of the *242 lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But `[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] ... Thus, `[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute `with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (People v. Pieters (1991) 52 Cal.3d 894, 898-899 [276 Cal. Rptr. 918, 802 P.2d 420], fn. omitted; accord, Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735 [248 Cal. Rptr. 115, 755 P.2d 299]; Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist. (1978) 21 Cal.3d 650, 658-659 [147 Cal. Rptr. 359, 580 P.2d 1155].)
In addition to the language of the statute and the rules of statutory construction, a third applicable consideration is public policy. (Steketee v. Lintz, Williams & Rothberg (1985) 38 Cal.3d 46, 57 [210 Cal. Rptr. 781, 694 P.2d 1153].)
Applying these principles, we read section 51286 with reference to the entire scheme of the Williamson Act, of which it is a part, because the plain words used do not indicate whether this limitations statute was intended to cover actions attacking the Assessor's cancellation valuation. The absence of any reference to actions by the Assessor in the statutory language tends to militate against application of the statute to actions against the Assessor.

B. The legislative scheme and history.

Looking to the legislative scheme, it is unclear whether the Legislature intended section 51286 to be the applicable statute of limitations to all actions regarding the enforcement of the provisions of the Williamson Act. While it is the only statute of limitations regarding the Williamson Act, section 51286 was not enacted in 1965 with the other provisions of the Williamson Act. Instead, the current substantive version of section 51286 was not enacted until 1981 as part of the Robinson Act, which was enacted in response to the California Supreme Court's decision in Sierra Club v. City of Hayward (1981) 28 Cal.3d 840 [171 Cal. Rptr. 619, 623 P.2d 180]. (See Honey Springs Homeowners Assn. v. Board of Supervisors (1984) 157 Cal. App.3d 1122, 1132-1133 [203 Cal. Rptr. 886].) Section 8 of chapter 1095 of Statutes of 1981, at page 4254, states: "The Legislature finds and declares *243 that the purpose of this act is not to weaken or strengthen the Williamson Act but simply to clarify and make the law workable in light of problems and ambiguities created by the [Hayward] decision...."
In Hayward, supra, the court rejected the contention that a decision to cancel a WAC is legislative in nature and thus reviewable only in an ordinary mandamus action, stating: "We have repeatedly held that administrative mandamus is appropriate `for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer....' (Code Civ. Proc., § 1094.5, subd. (a); [citations].) The statute at hand clearly requires a public hearing (Gov. Code, § 51284) and discretionary weighing of evidence in order to make required findings (id., § 51282). Furthermore, cancellation proceedings are classically adjudicatory in nature: the landowner must initiate the proceedings by filing a petition for cancellation; the council sits as arbiter, hearing evidence from proponents and opponents; and in every case the ultimate decision, unlike most zoning and annexation decisions, directly affects only one parcel.... Accordingly, we agree with the trial court that cancellation of a land preservation agreement is adjudicatory and therefore reviewable in a proceeding brought under the provisions of section 1094.5." (Sierra Club v. City of Hayward, supra, 28 Cal.3d at p. 849, fn. omitted.)
Section 51286 codified the above holding, except that it lengthened the statute of limitations to 180 days instead of permitting application of the 90-day limitation as provided in Code of Civil Procedure section 1094.6, subdivision (b), which generally governs actions filed pursuant to Code of Civil Procedure section 1094.5. Diablo Grande contends "The careful balance drawn by the Legislature in response to [Hayward] would be destroyed if appellant's arguments against application of the 180-day limitation period in section 51286 to actions like this action were accepted."[6] However, while section 51286 was a response to the holding in the Hayward case, it was essentially a codification of the specific Hayward holding quoted above. *244 Nothing in Hayward indicates its holding had anything to do with the Williamson Act when it determined the applicable procedure for a review of the City of Hayward's action in canceling the WAC. The Williamson Act was silent on this question. Instead, the court relied on the principles of stare decisis in determining the appropriate procedure to be followed for review of decisions of a local body in canceling a WAC. Because neither the language of section 51286 nor its legislative history indicate it applies to the present action, we look to the same factors applied by the Hayward court in order to determine the applicability of section 51286 to the instant action. Thus, the question of whether section 51286 was intended to apply to the instant action may be answered by the Hayward case.

C. Code of Civil Procedure section 1094.5.

The pertinent part of section 1094.5 of the Code of Civil Procedure was quoted in the Hayward opinion and set out above. To determine whether the cancellation valuation falls within the parameters of section 1094.5, we must determine whether the final administrative order or decision was made as a result of a proceeding in which by law a hearing was required to be given, evidence was required to be taken and discretion in the determination of the facts was invested in the inferior board. In the instant case, there were no such requirements with respect to the assessment of the cancellation value. Section 51283, subdivisions (a) and (b), provides:
"(a) Prior to any action by the board or council giving tentative approval to the cancellation of any contract, the county assessor of the county in which the land is located shall determine the current fair market value of the land as though it were free of the contractual restriction. The assessor shall certify to the board or council the cancellation valuation of the land for the purpose of determining the cancellation fee.
"(b) Prior to giving tentative approval to the cancellation of any contract, the board or council shall determine and certify to the county auditor the amount of the cancellation fee which the landowner shall pay the county treasurer as deferred taxes upon cancellation. That fee shall be an amount equal to 121/2 percent of the cancellation valuation of the property."
As can be seen, the Board had no duty and no authority with regard to the valuation other than the ministerial duty to compute the cancellation fee in an amount equal to 12.5 percent of the cancellation valuation and to certify this number to the county auditor. Section 51284 does not require the amount of the cancellation valuation be included in the notice of hearing. It does require that within 30 days of tentative cancellation of the WAC, a city *245 or county make public a general explanation of its decision including the findings made pursuant to section 51282. Notably, the necessary findings listed in section 51282 do not include any information about the cancellation fee. Indeed, the notice sent out in this case included a copy of the tentative cancellation decision, but the amounts of the cancellation fee were left blank.
Nonetheless, Diablo Grande points out that under section 51284, the Board is required to hold a hearing at which it determines the cancellation fee and decides whether to approve the cancellation. Diablo Grande reasons that those objecting to the assessor's determination of the cancellation value or to the board's determination of the cancellation fee based on this valuation could raise their objections at this hearing and could bring in evidence before the board to support their objections.
The problem with this argument is the current fair market valuations referred to in section 51283, upon request of either of the parties to the contract, are subject to appeal to the county board pursuant to Revenue and Taxation Code section 1604. (§ 51203.) Thus, it is through a proceeding under section 1604 of the Revenue and Taxation Code that the Board, sitting as a board of equalization or an assessment appeals board, can make a final administrative order or decision regarding the cancellation valuation resulting from a proceeding in which by law a hearing was required to be given, evidence was required to be taken and discretion in the determination of the facts was invested in the Board. It is thus clear the Board's duties under section 51284 and those under Revenue and Taxation Code section 1604 are entirely different for purposes of ascertaining whether Code of Civil Procedure section 1094.5 applies to a cancellation fee determined only pursuant to a section 51284 proceeding.
(2) There is no question Code of Civil Procedure section 1094.5 applies to a review of the Board's decision on the cancellation valuation when the Board sits as an assessment appeals board. (Shell Western E & P, Inc. v. County of Lake (1990) 224 Cal. App.3d 974, 979 [274 Cal. Rptr. 313]; Westlake Farms, Inc. v. County of Kings (1974) 39 Cal. App.3d 179, 183-185 [114 Cal. Rptr. 137].) We believe it is equally clear Code of Civil Procedure section 1094.5 does not apply when the Board, sitting as a board of supervisors, determines and certifies to the county auditor the amount of the cancellation fee which the landowner shall pay the county treasurer as deferred taxes upon cancellation of a WAC pursuant to section 51283, subdivision (b). In that instance, if the board disagrees with the assessor's cancellation valuation, its only recourse is, as a party to the contract, to appeal as authorized by section 51203.
*246 (1b) In short, neither the legislative history nor the legislative scheme support the argument that the Legislature intended the statute of limitations it enacted in section 51286 to apply to actions which challenge only the assessor's cancellation valuation and not the decision of the board to cancel a WAC. As such, the language of the statute, which does not expressly include the instant action, must prevail.[7]

D. Alleged motive for the action versus the gravamen of the action.

An underlying theme running through Diablo Grande's arguments is the notion the State filed the instant action not because it wants to collect on underpaid taxes, but instead, as a backdoor approach to kill the cancellation. It is highly questionable whether this court should consider the apparent motives behind a particular action in determining whether a statute of limitations should apply.[8] Such an argument might apply to a defense of malicious prosecution or laches. (3) Generally, as in this case, the question of whether a statute of limitations applies is a pure question of law based on the language of the statute in question or any legislative intent which can be discerned from its legislative history.
Diablo Grande also relies on Hensler v. City of Glendale (1994) 8 Cal.4th 1 [32 Cal. Rptr.2d 244, 876 P.2d 1043] for the proposition plaintiffs cannot rely on the general statute of limitations set forth in Code of Civil Procedure section 338, because section 51286 is a more specifically applicable code section. Since general statutes of limitation "are applicable only if no *247 `different limitation is prescribed by statute'" (Hensler v. City of Glendale, supra, 8 Cal.4th at p. 22, quoting from Code Civ. Proc., § 312), Diablo Grande reasons that the specific statute must apply. However, the initial inquiry is whether the specific statute is applicable. If it is not, then the rule codified in section 312 of the Code of Civil Procedure, by its terms, does not come into play.
The court in Hensler noted, "To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the `gravamen' of the cause of action. [Citations.] `[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.' [Citation.]" (Hensler v. City of Glendale, supra, 8 Cal.4th at pp. 22-23.) There, the statute of limitations was section 66499.37, which provided, in pertinent part: "Any action or proceeding to attack, review, set aside, void or annul the decision of an advisory agency, appeal board or legislative body concerning a subdivision, ... or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced ... within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations...."
(1c) Hensler's cause of action arose from a decision that applied a local ordinance to his subdivision application which then resulted in a limitation of development potential. Hensler did not challenge the ordinance when it was first enacted but instead developed his land in accordance with its requirements. Subsequently, he sought money damages as compensation on the theory of inverse condemnation for what he claimed was a "taking" of his property because he could not develop certain sections of it as he had planned to do. He claimed section 66499.37 did not apply to his lawsuit because he was not attacking the validity of the land use ordinance but merely sought compensation for the taking of his property. The court disagreed, stating:
"This section is not, as plaintiff argues, limited to actions for specific relief. It includes actions for compensation for a regulatory taking because the validity of the ordinance or its application to the plaintiff's property, if uncompensated, must be determined in the action  i.e., the court must determine if there has been a taking. Before he or she is entitled to any relief, either compensation or exemption of the property from the development *248 restriction, the plaintiff must establish that the ordinance, regulation, or administrative action is not lawful or constitutionally valid if no compensation is paid. The action therefore comes within the broad language of section 66499.37.
"Had plaintiff exhausted his administrative remedies by first seeking a variance and pursuing an administrative appeal challenging the permit conditions, and made his claim that the administrative actions constituted a taking in a petition for writ of mandate seeking review of the agency action filed pursuant to Code of Civil Procedure section 1094.5, the application of section 66499.37 could not be questioned. His action would be one to attack a decision of an appeal board, or, if no administrative appeal is available under the Glendale ordinance, an action of the administrative agency, concerning a subdivision, and the act done prior to that decision. It would clearly be an action to determine the validity of the permit conditions. A plaintiff may not avoid the application of section 66499.37 by electing to forego raising his claim in the administrative mandamus proceeding in which the owner must exhaust administrative remedies for an erroneous, excessive, or unreasonable restriction on development. If the taking claim is not asserted in that proceeding, the challenge to the validity of the administrative action must be resolved in the inverse condemnation action in order to determine if compensation is due, and to allow the administrative agency or local government the opportunity to rescind the land-use restriction or its application to the plaintiff's property. A court cannot determine that compensation is due on allegations like those of plaintiff's complaint without determining if the development restriction is a taking. It must, necessarily, rule on the validity of the ordinance, regulation, or administrative act under which development is restricted.
"In sum, when there has been no prior determination that the plaintiff's property has been taken by virtue of governmental action authorized by the Subdivision Map Act, a court hearing an inverse condemnation action based on that action must determine whether, on its face or as applied, the ordinance or regulation would be invalid if the property owner is not compensated for the claimed taking.
"The gravamen of plaintiff's cause of action is therefore a claim that the Glendale ordinance is invalid on its face or as applied because, through the authority of that ordinance and/or regulations enacted under it, the city has taken his property without compensation. Plaintiff cannot transform the action into one which does not challenge the validity of the ordinance, regulations, and administrative actions by acquiescing in the taking, assuming the validity of those actions, and seeking only damages. The election is *249 not his, but the city's. Under a cause of action such as that stated by the complaint in this case, regardless of the title attached to the cause of action or the remedy sought, the plaintiff must prove that the ordinance and regulations as applied have worked a `taking' of the plaintiff's property and that the plaintiff has not been compensated.
"Viewed from this perspective it is apparent that section 66499.37 governs the time within which this action should have been initiated...." (Hensler v. City of Glendale, supra, 8 Cal.4th at pp. 25-26, fns. omitted.)
In contrast to the Hensler case, the instant action is not dependent on finding the Board's approval of the cancellation is invalid. It instead challenges a different decision (the cancellation valuation), made by a different agency, the Assessor. The Hensler decision is thus distinguishable. Instead, applying the "gravamen" test, we conclude the gravamen of this case is to compel the Assessor to assess the resort parcel in the manner required by the Williamson Act. While the end result of the action may be to force Diablo Grande to either pay a higher cancellation fee or to abandon the cancellation petition, the latter of which Diablo Grande contends is plaintiffs' true motivation for the action, it is still not an action seeking to attack the Board's cancellation decision. As such, the Hensler case is of no help to respondents' cause.

E. Avoidance of absurd results.

Diablo Grande contends construction of section 51286 pursuant to its plain language would lead to absurd results. Specifically, Diablo Grande contends "It would be absurd to allow the cancellation fee, which is primarily intended to deter cancellation and the determination of which is an integral part of and a statutory precondition to the cancellation decision, to be challenged years after the cancellation decision has to be challenged."
It is well established that "... where the language of a statutory provision is susceptible of two constructions, one of which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted [citations]." (Clements v. T.R. Bechtel Co. (1954) 43 Cal.2d 227, 233 [273 P.2d 5]; Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1166 [278 Cal. Rptr. 614, 805 P.2d 873].)
Diablo Grande contends it is more than reasonable to assume the Legislature intended challenges to the cancellation fee, or to the cancellation valuation on which it is based, be brought within the same 180-day period as challenges to the cancellation decision. Otherwise, if one could wait three *250 years to challenge the assessment of the cancellation fee, the status of the cancellation would remain uncertain for too long. Thus, a landowner could not safely plan for the cancellation and a county could not make sound fiscal projections.
On the other hand, there are other considerations which point to a contrary conclusion. For example, the longer statute gives a greater opportunity for ripeness of the issues. Until the cancellation fees are actually paid by the landowner to the county, there is uncertainty as to the amount and the existence of the state's entitlement. If the landowner does not pay within one year of the date of the tentative cancellation, the assessor's "current fair market" appraisal of the property must be redone at the time of the eventual payment. (§ 51283.4.) Further, at any time prior to the payment of fees, the landowner may simply withdraw from the cancellation by withdrawing his or her request to cancel the WAC. (§ 51281.)
Interestingly, Diablo Grande does not dispute that other statute of limitation periods besides section 51286 potentially apply to legal disputes involving cancellation fees or underpaid taxes. For example, Revenue and Taxation Code section 1604 gives the assessment appeals board two years in which to render a decision when the county or landowner appeal the assessor's valuation for purposes of determining the cancellation fee pursuant to section 51203. Also, Revenue and Taxation Code section 532, subdivision (a), gives the assessor four years in which to go back and assess for unpaid and underpaid taxes. We fail to see how the application of a three-year statute of limitation period in the instant case can lead to "absurd results" when it is well within the ballpark of other statute of limitation periods covering somewhat similar situations involving taxation/assessments levied against real property.
Thus, while there are factors favoring the short 180-day limitation period, there are also factors favoring the application of a longer limitation period. As this case has amply demonstrated, the Williamson Act has created inherent tensions between the interests of landowners, local government, and the State. As a court, we are in no position to take evidence, hear from constituents, consult experts, and thereby determine what limitation period best fits the goals of the Williamson Act. The legislation creating the Williamson Act was based on a desire to ensure preservation of agricultural lands. It is up to the Legislature to determine what limitation period on actions such as this one best serves the needs of all citizens of the State. Absent clear guidance, this court can only attempt to ascertain the intent of the Legislature in order to effectuate the purpose of the law, as we have done above.

*251 F. Public policy considerations.

Finally, public policy does not favor the application of section 51286 in this action. (4) It is well established that "Statutorily imposed limitations on actions are technical defenses which should be strictly construed to avoid forfeiture of a plaintiff's rights [citation]. Such limitations are obstacles to just claims and the courts may not indulge in a strained construction to apply these statutes to the facts of a particular case [citations]." (Sevilla v. Stearns-Roger, Inc. (1980) 101 Cal. App.3d 608, 611 [161 Cal. Rptr. 700].) "Finally, there is a `strong public policy that litigation be disposed of on the merits wherever possible.' [Citation.]" (Steketee v. Lintz, Williams & Rothberg, supra, 38 Cal.3d at pp. 56-57.)

G. Conclusion.

(1d) For all of the reasons stated above, we conclude the trial court erred in its determination that plaintiffs' action was barred by the statute of limitations pursuant to section 51286.
Furthermore, we agree with plaintiffs that the applicable statute of limitations is Code of Civil Procedure section 338, subdivision (a), because the instant action is based upon "a liability created by statute, other than a penalty or forfeiture." As noted previously, section 51283, subdivision (a) requires the county assessor to determine the fair market value of land as though it were free of a WAC restriction prior to approval of a cancellation of the WAC. The gravamen of the instant action is to compel the Assessor to comply with this statute. Thus, this action is based upon a liability created by statute.
Diablo Grande's contention that the "liability created by statute" is a "penalty" thereby making Code of Civil Procedure section 338, subdivision (a) inapplicable to plaintiffs' situation is without merit. The whole extent of Diablo Grande's argument follows: "What is more, as can be seen in [plaintiffs'] own quotation of subdivision (a) of Section 338[], subdivision (a) only applies to actions upon a liability `other than a penalty or forfeiture.' The cancellation fee is considered and has been described as a `penalty.' (See, Honey Springs, supra, 157 Cal. App.3d at 1147, stating that `to prevent speculators and developers from using the Williamson Act as a "tax shelter," it imposes a cancellation fee (§ 51283) or an additional deferred tax (§ 51283.1)' but `these penalties may be waived.')"
In considering the meaning of "penalty or forfeiture" in the context of Code of Civil Procedure section 338, subdivision (a), we look to Code of *252 Civil Procedure section 340 which sets forth the statute of limitations applicable to an action based "upon a statute for a penalty or forfeiture." Diablo Grande suggests, without authority, that the cancellation fee constitutes a "penalty" for purposes of section 340.[9] We disagree. (5) "The test generally underlying most of the cases, however, is that a `penalty' includes any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him for a legal damage done him by the former." (Miller v. Municipal Court (1943) 22 Cal.2d 818, 837 [142 P.2d 297].) This would include statutes which provide for mandatory double or treble damages. (See, e.g., Menefee v. Ostawari (1991) 228 Cal. App.3d 239, 243-244 [278 Cal. Rptr. 805]; G.H.I.I. v. MTS, Inc. (1983) 147 Cal. App.3d 256, 277 [195 Cal. Rptr. 211, 41 A.L.R.4th 653], and cases cited therein.)
(1e) Here, the cancellation fee can only be paid by Diablo Grande voluntarily to permit Diablo Grande to cancel the WAC. Diablo Grande is not being compelled to cancel the WAC by plaintiffs. Further, plaintiffs are not attempting to compel Diablo Grande to pay a cancellation fee by bringing this action. Thus, we conclude the instant action is not based upon a "statute for a penalty or forfeiture" within the meaning of Code of Civil Procedure section 340. Instead, as we have previously determined, it is governed by section 338, subdivision (a) of the Code of Civil Procedure.

II. The State has standing to pursue this action.

(6a) The trial court also found the plaintiffs lacked standing to challenge whether the cancellation value was determined in accordance with law. Plaintiffs contend the court erred in making this determination.
There are several statutory provisions which delineate duties by the various state agencies. The question presented is whether the instant action is encompassed within any of the statutory duties assigned to the plaintiffs. Further, assuming the instant action does fall within the duties of the plaintiffs, we must determine whether the instant action is preempted by the duties of other state agencies.
The Secretary is authorized by section 16147 as follows: "The Secretary of the Resources Agency may request the Attorney General to bring any action in court necessary to enforce any enforceable restriction as defined in *253 Section 422 of the Revenue and Taxation Code, upon land for which the secretary has certified payment of state funds to the local governing body during the current or any preceding fiscal year. Such action may include, but is not limited to, an action to enforce the contract by specific performance or injunction."
The WAC between the County and Diablo Grande expressly provides at paragraph 7 that the computation of any cancellation value will be in accordance with the Williamson Act. Plaintiffs contend the instant action is one to enforce that term of the contract. In addition, plaintiffs contend this action is to enforce "enforceable restrictions" under section 16147 irrespective of the language in the particular contract.[10] Payment of a cancellation fee based upon the full market value of the land as though it was free from restrictions is necessary in order to interpret the Williamson Act as providing the enforceable restrictions necessary to make it constitutional. (Sierra Club v. City of Hayward, supra, 28 Cal.3d at p. 855; Lewis v. City of Hayward (1986) 177 Cal. App.3d 103, 113 [222 Cal. Rptr. 781].) Plaintiffs further note the Williamson Act serves the remedial purpose to preserve open space, and therefore, its language must be interpreted liberally to effectuate the remedial purpose. (Kim v. Servosnax, Inc. (1992) 10 Cal. App.4th 1346, 1356 [13 Cal. Rptr.2d 422].) Plaintiffs conclude that all of the foregoing factors require the language of section 16147 (which authorizes the Secretary to bring actions to enforce all enforceable restrictions of the Williamson Act) not to be so narrowly construed as to limit the authority to land use restrictions only when the contract is in effect.
In addition, plaintiffs note the Secretary, as an agency secretary (see §§ 12800, 12801, 12805), has all the power of a head of a department pursuant to article 2 of the Government Code, commencing with section 11180. Section 11180 authorizes the head of a department to "make investigations and prosecute actions concerning: [¶] (a) All matters relating to the business activities and subjects under the jurisdiction of the department." Since the Secretary is charged with determining whether a local agency's determination to waive the cancellation fee is appropriate (§ 51283, subd. (c)(3)), among other things, plaintiffs contend the matter of cancellation fees is certainly within the jurisdiction of the Secretary. (See Dorcich v. Johnson (1980) 110 Cal. App.3d 487, 496 [167 Cal. Rptr. 897] [noting the Secretary of Resources is the only source of consistent and uniform statewide cancellation fee practices, which indicates the Secretary's duty is discretionary rather than ministerial].)
*254 The Department is a department of the Agency (§ 12805), and is also authorized to prosecute actions concerning matters under its jurisdiction and by delegation from the Secretary. (See §§ 12850, 12854.) The Department is also expressly authorized by statute to interpret the Williamson Act and its policies, purposes, procedures, administration and implementation. (§ 51206.) The Department is required to make a report to the Legislature every other year, including information on the number of acres removed from its protection by cancellation, the number of cancellations reported to the Department, the amount of cancellation fees which remain unpaid and the number of acres covered by approved cancellations. (§§ 51207, 51284.)
The statutory scheme noted above points to the conclusion that the State has standing to bring this action. This is true both in terms of the plaintiffs' charge with enforcing the Williamson Act and because the State has a significant pecuniary interest, inasmuch as it receives the cancellation fee paid. Diablo Grande concedes the Secretary has the expertise to investigate the uses of property and has an interest in ensuring the preservation of agricultural land, land use and resource preservation. Diablo Grande argues, however, that the Secretary has no expertise in land valuation or interest in the amount of any property tax losses and subventions. The Assessor and Diablo Grande contend it is a different agency of state government, namely, the Board of Equalization (SBE), which is charged specifically with the duty to compel assessors and county tax officials to comply with the law. They reason that only the SBE has standing to bring an action which questions the adequacy of a cancellation valuation. Plaintiffs counter that more than one agency can have concurrent standing on the issue.
Subdivision (h) of section 15606 charges the SBE, through representation by the Attorney General, with the duty to "Bring an action in a court of competent jurisdiction to compel an assessor or any city or county tax official to comply with any provision of law, or any rule or regulation of the board adopted in accordance with subdivision (c), governing the assessment or taxation of property." It is thus clear the SBE has standing to bring the instant action in an attempt to compel the Assessor to follow the law in determining the cancellation value. However, even though plaintiffs requested the SBE to become involved in the matter on the basis the cancellation valuation was too low, the SBE disagreed and refused to become involved in or initiate an action such as the instant one. What is not clear is whether section 15606 was intended to vest exclusive jurisdiction in the SBE with respect to all matters governing the assessment or taxation of property to the exclusion of other state agencies. Although both the Assessor and Diablo Grande contend this is exactly what section 15606 does, they provide *255 no authority to support their contention. Furthermore, they fail to note anything in the statutory language which would support the notion it was intended to create exclusive jurisdiction.
Plaintiffs aptly point out that where the Legislature wants only one agency to have jurisdiction over a matter, it says so unequivocally, as it did with regard to section 1759 of the Public Utilities Code. Even under that code section, however, it has been held that in certain circumstances concurrent jurisdiction still exists. (Vila v. Tahoe Southside Water Utility (1965) 233 Cal. App.2d 469, 477-479 [43 Cal. Rptr. 654].)
Here, there is no indication the SBE is to have exclusive jurisdiction simply because it is given jurisdiction by statute. Rather, as noted earlier, it is clear the plaintiffs are empowered by statute to enforce the provisions of the Williamson Act. Thus, they have standing to bring the present action even though SBE also has jurisdiction to do so. This holding harmonizes the various statutory provisions because SBE and the plaintiffs have different concerns regarding the same matter. Plaintiffs are concerned with the enforcement of the Williamson Act in an effort to effectuate its purposes. SBE is concerned only with compliance with laws governing the assessment or taxation of property.
Plaintiffs allege the Assessor failed to comply with the Williamson Act in the manner the Assessor determined the cancellation value. By filing general demurrers to the action, the respondents have admitted the truth of all material factual allegations of the action. Plaintiffs' "ability to prove the allegations, or the possible difficulty in making such proof, does not concern the reviewing court." (Aragon-Haas v. Family Security Ins. Services, Inc. (1991) 231 Cal. App.3d 232, 238 [282 Cal. Rptr. 233].) For purposes of this appeal, this court is not concerned with whether plaintiffs have the expertise or special competence, as does SBE, to make land valuations. Nor are we concerned with whether any relief afforded in terms of money will directly benefit plaintiffs. So long as there are allegations the law was not followed and plaintiffs are charged with enforcement of the law, standing is established.
Further, this is not necessarily a matter to be resolved by the County assessment appeals board, as argued by the Assessor, since there is no question presented with respect to the value of the property. The issue is whether the Assessor followed the law when it determined the cancellation valuation. By their general demurrer, the Assessor admits for purposes of the resolution of the questions of law presented that it did fail to follow the law *256 when it determined the cancellation value. (7) While a court may have no jurisdiction to establish the land value of property for assessment purposes (see Norby Lumber Co. v. County of Madera (1988) 202 Cal. App.3d 1352, 1362-1363 [249 Cal. Rptr. 646]), it does have the power to review specific valuations and methods of valuation employed where it is alleged there was a "failure to follow the standards prescribed by the Legislature." (Id. at p. 1363.) (6b) This is exactly what plaintiffs allege in their action. Thus, regardless of whether the County assessment appeals board may have jurisdiction to resolve the issue, as pled, the trial court also has jurisdiction.
For these reasons, we conclude plaintiffs have standing to bring the instant action. In addition, the trial court has the power to provide the relief sought, i.e., that the Assessor be compelled to follow the statutory provisions of the Williamson Act in determining the cancellation value of the resort parcel.

III. Plaintiffs' action is not barred by the doctrine of administrative remedies.

(8a) Plaintiffs finally claim the court erred by ruling the instant action was barred because plaintiffs failed to exhaust the administrative remedy provided by section 51203,[11] which states: "The current fair market valuations referred to in Section 51283, upon the request of either of the parties to the contract, shall be subject to appeal to the county board pursuant to Section 1604 of the Revenue and Taxation Code." Plaintiffs contend section 51203 has no application to them because it plainly refers only to "parties to the contract." Since the State was not a party to the WAC, plaintiffs conclude section 51203's administrative remedy by way of appeal to the county board does not apply to them.
Section 51240 provides, in pertinent part: "Any city or county may by contract limit the use of agricultural land for the purpose of preserving such land...." Similarly, under section 51282, it is the local government upon the petition of the landowner that decides whether to approve the application to cancel a WAC with itself in order to accommodate a strong local public interest. Thus, the State is not a party to the contract.

*257 A. Assessor's position.

The Assessor argues section 51286 establishes that the method of attacking a decision by the local agency is by way of administrative mandamus within the 180-day statute of limitations. However, this argument fails since section 51286 has no application to this action.
Assessor's other argument is that the SBE is the agency with the expertise and qualifications to challenge the assessment. However, as we have previously noted, the SBE, the Agency and the Department have different duties, interests and responsibilities, even though they are all part of state government. The fact that one agency, here the SBE, does not want to get involved in the matter, does not mean no other state agency has standing to get involved in the matter for its own reasons and to serve its own particular interests. Moreover, the issue, as framed in the action, is not a challenge to the cancellation valuation on the ground the Assessor erroneously applied a valid method of determining the full cash value. Rather it is instead a question of law  did the Assessor violate the standards prescribed by law? (Norby Lumber Co. v. County of Madera, supra, 202 Cal. App.3d at p. 1363.) Thus, we reject both of Assessor's arguments.

B. Diablo Grande's position.

Diablo Grande's first argument for applying the doctrine of exhaustion of administrative remedies is that "Either there are administrative remedies to bring objections to the assessment of a cancellation valuation to the attention of the proper administrative officers or agencies before bringing the objections to court or there is no way to bring the objections before a court." Diablo Grande provides no authority to support this argument. Instead, case law is to the contrary. (9a) "[I]f the Legislature has not provided an administrative remedy, or the administrative remedy is not effective, the exhaustion requirement is not applicable. [Citations.] Additionally, the Legislature may grant the right to seek judicial review of an administrative action without resort to administrative remedies or may make the judicial and administrative remedies cumulative." (California Correctional Peace Officers Assn. v. State Personnel Bd., supra, 10 Cal.4th at p. 1151; see also TRIM, Inc. v. County of Monterey (1978) 86 Cal. App.3d 539, 545-546 [150 Cal. Rptr. 351]; Knoff v. City etc. of San Francisco (1969) 1 Cal. App.3d 184, 199 [81 Cal. Rptr. 683].) (8b) Thus the fact the Legislature limited section 51203 to the parties to a WAC indicates the State was not intended *258 to be bound by its requirements. As such, the exhaustion requirement is inapplicable.
Diablo Grande also argues the Board hearing on whether to approve cancellation provided a compulsory remedy on the issue of the Assessor's determination of the cancellation value. However, as we have discussed, the Board could not provide a remedy since the Board had no duty and no authority with regard to the valuation other than the ministerial duty to compute the cancellation fee in an amount equal to 12.5 percent of the cancellation valuation and to certify this number to the county auditor. At best, the Board could have appealed the matter to the County board of equalization if it agreed with plaintiffs that the valuation was incorrect. This is not a sufficient basis for requiring an exhaustion of this supposed remedy. (9b) As stated in Residents for Adequate Water v. Redwood Valley County Water Dist. (1995) 34 Cal. App.4th 1801, 1808 [41 Cal. Rptr.2d 123], "The doctrine of exhaustion of administrative remedies does not apply when the administrative agency has no jurisdiction to make the judicial determination that is the subject of dispute." (8c) Since the Board, sitting as a board of supervisors reviewing the cancellation petition, did not have jurisdiction to make a determination on the valuation issue, the doctrine of exhaustion of administrative remedies did not apply to plaintiffs with regard to the cancellation hearing.
Finally, Diablo Grande argues section 51203 applies to the State as a party to the contract because the State is a third party beneficiary. In other words, if the State has standing to bring the instant action, they must be able to question the cancellation valuation under section 51203. This argument has a surface appeal to it. However, it is a stretch to interpret the language of section 51203 to include third party beneficiaries, and Diablo Grande provides no authority to support such a construction. We are unaware of any authority which permits the State to intervene based on section 51203 to question an assessment. Given the language of section 51203, it would be fundamentally unfair to hold it applies to the State as a third party beneficiary and thereby cut off the State's rights in this action for failure to exhaust administrative remedies since the statutory language does not give fair notice that it applies not only to parties to the contract, but also to third party beneficiaries. We leave it to the Legislature to decide whether it wants to add language to the statute to include third party beneficiaries.

*259 DISPOSITION
The judgment of dismissal is reversed. Plaintiffs are awarded their costs of appeal.
Stone (W.A.), Acting P.J., and Dibiaso, J., concurred.
The petitions of both respondent and real party in interest for review by the Supreme Court were denied November 13, 1996. Werdegar, J., and Chin, J., were of the opinion that the petitions should be granted.
NOTES
[1] A WAC limits the use of agricultural land for the purpose of preserving the land in agricultural production for renewable terms of no less than 10 years. (Gov. Code, §§ 51220, 51240, 51244.) WAC status allows a parcel to be valued at a lower tax base as agricultural land but prohibits subdivision development.

Unless otherwise noted, all further statutory references are to the Government Code.
[2] There are two primary methods to terminate a WAC. The property owner may file a written notice of nonrenewal with the appropriate county in advance of the renewal date, and the WAC will dissolve automatically at the end of the existing term. (§§ 51245, 51246, subd. (a).) Alternatively, the property owner may petition the county board to cancel the WAC directly. (§ 51282.)
[3] After making a finding pursuant to section 51282, a board of supervisors of a county (board) or city council of a city, may grant tentative approval of cancellation. This procedure generally takes 30 to 60 days from the date of filing of the petition. Following tentative approval of cancellation, the landowner must pay a cancellation fee as deferred taxes within one year of the recording of the certificate of tentative cancellation by the clerk of the board. If not made within that period of time, the property must be reassessed and the fee recomputed. Within 30 days of receipt of notice by the landowner that the fee is paid, the board determines whether all conditions for cancellation have been met. If so, the board executes and records a certificate of cancellation of the WAC. The deferred taxes, i.e., the cancellation fee, is collected by the county and transmitted to the state controller for deposit in the general fund. (§§ 51283, 51283.4, subds. (a) & (b).)
[4] While not expressly granting the requests for judicial notice, the judge, who had also heard the motion for intervention, made extensive reference to the motion and the fact the Board of Equalization had chosen not to get involved. For the sake of clarity, we grant Diablo Grande's request to take judicial notice of all items included in "Assessor's Request for Judicial Notice" filed February 3, 1995, and Diablo Grande's "Request to take Judicial Notice," filed February 6, 1995.
[5] Diablo Grande had also argued the third cause of action failed to state a cause of action for constructive trust. However, the demurrer on this ground was overruled. For reasons unexplained in the record, the court's written order did not include this fact.
[6] A letter requesting additional authority or information regarding Diablo Grande's contention the legislative history of the Robinson Act supports its construction was sent by this court on May 15, 1996. In its letter response filed on May 31, 1996, Diablo Grande also filed the Robinson Act legislative history. As noted by Diablo Grande in its letter brief there is no specific reference in the legislative history, including the analyses or comments, regarding the intended scope of the 180-day limitations period in section 51286. Diablo Grande also concedes, "The 180-day statute of limitations in section 51286 is not mentioned as one of the compromises [between competing interests for a shorter versus a longer statutory time limitation]."
[7] Appellants also contend that under Revenue and Taxation Code section 408, subdivision (a), the information about comparable sales that was used for the valuation is not publicly available, and thus could not be made part of the record before the Board, as required for review under Code of Civil Procedure section 1094.5. (Citing Statewide Homeowners, Inc. v. Williams (1973) 30 Cal. App.3d 567, 570 [106 Cal. Rptr. 479].) However, given the conclusion the Board did not have jurisdiction to take evidence on the issue of the cancellation valuation when it considered whether to cancel the WAC, it is unnecessary to reach appellants' additional contention.
[8] There would be no end to speculation if we allowed ourselves to consider the parties' possible motives in bringing or in opposing this action. For example, we might infer that since the State accepted the County's payment of the cancellation fee, its motive in bringing this action is consistent with its stated purpose, i.e., it is not challenging the County's cancellation decision but merely the amount of the cancellation fee. If the State had wished to challenge the cancellation decision, presumably it would not have accepted the County's payment. We could infer Diablo Grande's motive in filing its demurrer was to prevent the State from potentially increasing the amount of the cancellation fee. Or, we could infer the County had a motive to help ensure cancellation of WAC No. 72-1025 so that the County would ultimately benefit by the receipt of additional tax revenues, and the availability of more jobs for local residents. The speculative nature of each of these possible theories illustrates how inappropriate it is for this or any court to consider motive in a pleading issue involving a question of law.
[9] In making this argument, Diablo Grande fails to explain why the plaintiffs' action to force the Assessor to comply with section 51283 is a penalty or forfeiture. While the cancellation fee may be loosely considered a penalty, and has been described in this manner (see Honey Springs Homeowners Assn. v. Board of Supervisors, supra, 157 Cal. App.3d at p. 1147), it may also be considered in the broader sense as an effort to enforce the cancellation fee.
[10] Revenue and Taxation Code section 422 provides, in pertinent part that "open-space land is `enforceably restricted' if it is subject to ... [¶] (a) A contract."
[11] "[I]n California a requirement that administrative remedies be exhausted is jurisdictional. [Citation.] Intervention by the court before the administrative agency that has resolved the claim would constitute an interference with the jurisdiction of another tribunal." (California Correctional Peace Officers Assn. v. State Personnel Bd. (1995) 10 Cal.4th 1133, 1151 [43 Cal. Rptr.2d 693, 899 P.2d 79].)