[No. D027877. Fourth Dist., Div. One. Dec. 15, 1997.]

JENEAN McBREARTY, Plaintiff and Respondent, v.
CITY OF BRAWLEY, Defendant and Appellant.

## COUNSEL

Horton, Knox, Carter & Foote, Dennis H. Morita and Jeffrey M. Garber for Defendant and Appellant.

Jenean McBrearty, in pro. per., for Plaintiff and Respondent.

## OPINION

McINTYRE, J.—In 1991, the City of Brawley (the City) adopted an ordinance imposing a utility tax on its residents and began collecting the tax. In 1996, Jenean McBrearty filed a petition for writ of mandate in superior court, contending, in part, that the City was required to submit the utility tax to a vote of the local electorate pursuant to statutes created by a 1986 initiative measure known as Proposition 62. The trial court issued a writ of mandamus requiring the City to submit the tax to a vote within approximately four months. The City appeals, contending that this action is barred by the statute of limitations and that the law does not, or should not be interpreted to, require it to place the utility tax on the ballot. We find the City's arguments unavailing and affirm the issuance of a writ of mandate, although we modify the scope of the order.

### BACKGROUND

1. *Law Relating to Local Taxation*

In 1986, the voters approved Proposition 62, a statutory initiative, to increase the control of the electorate over local taxation. The initiative added sections 53720 through 53730 to the Government Code.[1] It prohibited local governments from imposing any general tax unless and until the tax was submitted to, and approved by a majority of, the local electorate. (§ 53723.)

Shortly after the passage of Proposition 62, a challenge was asserted to the constitutionality of this provision of the initiative. (See *City of Woodlake* v. *Logan* (1991) 230 Cal.App.3d 1058 [282 Cal.Rptr. 27] (*Woodlake*).) In that case, the appellate court held that voter approval requirement unconstitutional.

---

[1]All statutory references are to the Government Code unless otherwise specified.

## 2. *The City's Enactment of Its Utility Tax*

In the late 1980's and early 1990's, the City experienced difficulties in developing a balanced budget for its general fund and was forced to cut certain public services as a result of its budget problems. In July of 1991, the city council, faced with a substantial projected budget deficit for the 1991-1992 fiscal year, passed an ordinance establishing a general utility tax, payable into the general fund. The City did not seek voter approval of the tax before beginning to collect it.

## 3. *Changes in the Legal Landscape*

In September 1995, the issue of the constitutionality of Proposition 62 came before the California Supreme Court in *Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220 [45 Cal.Rptr.2d 207, 902 P.2d 225] (*Guardino*). There, the Santa Clara Local Transportation Authority sought to validate a countywide sales tax that had been approved by 54.1 percent of the voters in a general election. Opponents of the tax asserted in part that the tax violated Proposition 62[2] and the California Supreme Court agreed. In reaching its conclusion, the court was faced with the preliminary issue of whether Proposition 62 was constitutional. Rejecting the analysis in *Woodlake*, the court held that Proposition 62's requirement of voter approval was not unconstitutional. (*Guardino, supra,* 11 Cal.4th at pp. 238-261.)

## 4. *This Action*

In July 1996, McBrearty filed a petition for writ of mandamus, alleging that the City was required, under Proposition 62, to submit the tax to a public vote and seeking to enjoin the City from collecting the tax pending such a vote. The City challenged the petition on the ground that it was barred by the statute of limitations and that, to the extent the petition was timely filed, the *Guardino* opinion should only be applied prospectively, i.e., to taxes imposed thereafter. The trial court ruled that *Guardino* applied to the utility tax in question and ordered the City to put the tax to a public vote no later than June 3, 1997. The City did not submit the tax to a vote, but instead filed this appeal.

DISCUSSION

The City raises numerous arguments in support of its appeal. First, it contends that the petition is barred by the statute of limitations. Second, it

---

[2]The tax at issue in *Guardino* was a special tax, which pursuant to Proposition 62, required two-thirds voter approval, rather than approval by a simple majority. (§ 53722.)

asserts that the trial court erred in granting the petition because Proposition 62 is unconstitutional for reasons not addressed in *Guardino*. Third, it contends that *Guardino* should not be applied "retroactively" to require voter approval of its utility tax. Finally, it urges that constitutional amendments adopted by California voters as Proposition 218 in November 1996, support the conclusion that the utility tax is not subject to voter approval. For the reasons that follow, we find these arguments unavailing.

## 1. *Bar of the Statute of Limitations*

The statute of limitations applicable to a request for mandamus relief depends on the nature of the obligation sought to be enforced. (*Ragan v. City of Hawthorne* (1989) 212 Cal.App.3d 1361, 1367 [261 Cal.Rptr. 219].) Here, McBrearty seeks to enforce the City's obligation to submit its utility tax to a public vote, an obligation based on the statutory provisions created by Proposition 62. Because the City's obligation is a liability created by statute (*ibid.*; *People* ex rel. *Dept. of Conservation v. Triplett* (1996) 48 Cal.App.4th 233, 251 [55 Cal.Rptr.2d 610]; *Peles v. La Bounty* (1979) 90 Cal.App.3d 431, 435 [153 Cal.Rptr. 571]), a three-year statute of limitations applies. (Code Civ. Proc., § 338, subd. (a).)

The City argues that McBrearty's cause of action accrued in July 1991, when the utility tax was imposed, and thus her 1996 petition for writ of mandate was not timely filed. The determination of when the statute of limitations begins to accrue depends on the gravamen of McBrearty's claims. (See *Monroe v. Trustees of the California State Colleges* (1971) 6 Cal.3d 399, 405-406 [99 Cal.Rptr. 129, 491 P.2d 1105].)

As framed on this appeal,[3] McBrearty seeks to compel the City to now comply with its duty under Proposition 62 to submit the utility tax to a vote by the electorate. Under controlling case law prior to *Guardino*, the City had no such duty and, accordingly, McBrearty had no valid basis for seeking mandamus relief against the City. (*Brandt v. Board of Supervisors* (1978) 84 Cal.App.3d 598, 600 [147 Cal.Rptr. 468] [petition for writ of mandate is defective if it fails to show that the respondent agency had a present duty to perform the act sought to be compelled].)

We recognize that a judicial opinion in a civil case does not generally "supersede the operation of the statute of limitations so as to revive old

---

[3]McBrearty's petition also seeks to compel the City to return the utility taxes collected since December 15, 1995. The trial court did not specifically rule on this aspect of the petition and neither party has raised an issue regarding the status of the taxes previously collected on this appeal; accordingly, we do not address it here.

claims which were not pursued because of a previously prevailing contrary rule of law, or to reincarnate dead causes which had fallen to the sword of the statute." (*Monroe* v. *Trustees of the California State Colleges, supra,* 6 Cal.3d at pp. 406-407, fn. omitted.) However, strict application of the general rule in this case would have required McBrearty to bring a lawsuit challenging the validity of the tax at a time when the legal landscape suggested her only chance of success would be upon review of the issue by the California Supreme Court. Short of such a herculean effort, the City could at no time have been compelled to conduct an election for the tax in question. This result would essentially thwart the intent of the electorate in passing Proposition 62, despite the confirmation of the validity of the initiative provisions in *Guardino*. In the circumstances presented here, we conclude that McBrearty's claim did not begin to run at the time the tax ordinance was adopted by the City, but rather when *Guardino* validated the provisions of Proposition 62 and thus established the existence of a duty on the part of the City to conduct an election. Thus, McBrearty's petition is not time barred.

## 2. *Constitutionality of Proposition 62*

 The City asserts that Proposition 62 is unconstitutional for reasons not addressed in *Guardino*. In particular, it contends that the voter approval required thereby is neither an initiative nor a referendum and thus is an unconstitutional mechanism for the involvement of the electorate in the legislative process. Although the City did not raise this argument in the proceedings below, McBrearty has not objected to its assertion on appeal. Further, because of the importance of the issue and in the interests of judicial economy, we address the argument on its merits.

Article IV, section 1 of the California Constitution provides that "[t]he legislative power of this State is vested in the California Legislature[,] which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." The voters' initiative power is "the power . . . to propose statutes and amendments to the Constitution and to adopt or reject them." (Cal. Const., art. II, § 8, subd. (a).) A referendum reflects "the power of the electors to approve or reject statutes or parts of statutes," except that such power does not apply, inter alia, to laws that impose taxes. (Cal. Const., art. II, § 9, subd. (a).)

In *Guardino* the local taxing authority argued that the voter approval requirement was an unconstitutional referendum. (*Guardino, supra,* 11 Cal.4th at pp. 238-247.) The Supreme Court disagreed and held that the voter approval requirement under Proposition 62 is not an exercise of

legislative power through either initiative or referendum, but arises as a valid condition imposed on the local agencies' taxing authority. (*Guardino, supra,* 11 Cal.4th at pp. 247-254.) The court determined that, pursuant to article XIII, section 24 of the California Constitution, the taxing authority of local agencies is not inherent, but exists only to the extent granted by the Legislature. In granting taxing power to local governments, the Legislature is permitted to prescribe the terms and conditions under which local governments may exercise that taxing power, including the imposition of a requirement of prior approval by the local electorate. (*Guardino, supra,* 11 Cal.4th at pp. 248-250.) Finally, the court concluded that the voters could constitutionally impose such a legislative condition through an initiative. (*Id.* at p. 253.)

Because the voter approval required under section 53723 is not an exercise of legislative power, but is instead a permissible condition placed on the exercise of local taxing authority, the City's challenge to the constitutionality of Proposition 62 on this basis must fail.

### 3. *Retroactive Application of Guardino*

■ The City argues that we should not apply *Guardino* retroactively to require a public vote on its utility tax. We understand the City's argument to be that *Guardino* cannot be applied to affect taxes being collected, now and in the future, where the local agency adopted the tax ordinance without a vote, in good faith reliance on the law existing before *Guardino* became final.

■ Generally, ". . . a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation." (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 151 [181 Cal.Rptr. 784, 642 P.2d 1305], fn. omitted.) This general rule is subject to exceptions "when considerations of fairness and public policy preclude full retroactivity. [Citation.]" (*Id.* at p. 152; *Estate of Propst* (1990) 50 Cal.3d 448, 462-463 [268 Cal.Rptr. 114, 788 P.2d 628] [decision will not be given retroactive effect so as to impair contracts made or property rights acquired in accordance with the prior rule].) The determination of retroactive effect is dependent upon the equities in each case. (*County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 681 [312 P.2d 680].)

■ The City contends that public policy and fairness considerations require that *Guardino* be applied on a prospective basis to the tax in question. Specifically, it contends that it relied on the pre-*Guardino* law in adopting and collecting the tax without a vote, a matter well substantiated in

the record. Further, based on the unequivocal language of *Woodlake* and the strength of the authorities cited therein, we conclude that the City's reliance was reasonable and justified. (See also *Guardino*, 11 Cal.4th at pp. 229-230.)[4]

Despite this reasonable reliance, however, we conclude that neither public policy nor equitable considerations support a prospective application of *Guardino* as it relates to the relief at issue on this appeal, to wit the requirement that the City conduct an election before continuing to collect the utility tax. A primary purpose of Proposition 62 was to "increase the control of the citizenry over local taxation . . . ." (*Guardino, supra,* 11 Cal.4th at p. 235.) Although requiring the City to conduct an election may ultimately have an impact on the City's ability to collect the utility tax and thus its financial condition, this was precisely what was intended by the electorate in passing Proposition 62. In this situation, the existence of prospective financial difficulties resulting from the implementation of the voter approval requirement does not constitute a legally cognizable hardship. (See *Monterey Peninsula Taxpayers Assn.* v. *County of Monterey* (1992) 8 Cal.App.4th 1520, 1542 [11 Cal.Rptr.2d 188].) Because the City has not established that conditioning the *future* collectibility of the utility tax on voter approval will create substantial inequitable results or cause undue financial hardship apart from those the challenged tax was intended to alleviate, we find that this does not establish a basis on which to conclude that *Guardino* is inapplicable.

## 4. *Impact of Proposition 218*

In November 1996, California voters adopted Proposition 218, which added articles XIII C and XIII D to the California Constitution. These amendments are similar to the statutory amendments created by Proposition 62 and require, in part, majority voter approval as a precondition to the imposition, extension or increase of any local general tax. (Cal. Const., art. XIII C, § 2, subd. (b).)[5] The provisions also specify that any local general tax imposed, extended or increased without voter approval between January

---

[4]Although the *Guardino* court noted that its decision in *Rossi* v. *Brown* (1995) 9 Cal.4th 688 [38 Cal.Rptr.2d 363, 889 P.2d 557], called the continuing viability of *Woodlake* into question, *Rossi* did not issue until almost four years after the City adopted and began collecting its utility tax.

[5]The ballot history makes clear that, despite the statutory provisions of Proposition 62 and the decision in *Guardino*, the drafters felt that a constitutional amendment was necessary to ensure that voter approval requirements would apply to charter cities as well as other local taxing authorities. (Ballot Pamp., Proposed Amends. to Cal. Const. with analysis of Proposition 218 by the Legislative Analyst and arguments to voters, Gen. Elec. (Nov. 5, 1996) p. 74; see also League of Cal. Cities, Prop. 218 Implementation Guide (Jan. 1997) Ann. Prop. 218 (hereinafter, Implementation Guide) p. A-22.)

1, 1995, and November 5, 1996 (the window period) would be subject to voter approval at an election to be held within two years of the effective date of the initiative, i.e., by November 5, 1998. (Cal. Const., art. XIII C, § 2, subd. (c).) Each party relies on Proposition 218 as supporting its position on appeal.

McBrearty contends that Proposition 218 has direct application to the case, because the City's utility tax was "imposed, extended or increased" during the window period created by Proposition 218. The record establishes that the utility tax was reduced in amount in 1996 and the parties appear to concede that the tax was not otherwise altered in duration or amount during the window period. McBrearty, however, takes the position that the City's continued collection of the tax during the window period constituted an "imposition" or "extension" thereof. She offers no ballot history or other legal basis for such a broad definition of those terms. Further, applying those terms as she defines them would require a local government to annually resubmit taxes previously approved by the voters, even in the absence of any change in the amount or duration of those taxes. Such an absurd result was clearly not intended by the voters. Accordingly, we reject McBrearty's contention and thus determine that Proposition 218 does not directly apply to the utility tax.

Conceding no such direct application, the City argues that Proposition 218 nonetheless impliedly grandfathers, and thus protects against challenge, any local general tax imposed prior to the January 1, 1995, window period date. Again, however, there is nothing in the ballot pamphlet provided to voters to support this conclusion. (Ballot Pamp., Proposed Amends. to Cal. Const. with analysis of Proposition 218 by the Legislative Analyst and arguments to voters, Gen. Elec. (Nov. 5, 1996) pp. 72-77.) In fact, Howard Jarvis Taxpayers Association, the sponsor of Proposition 218, stated that the window period provision was intended to discourage local taxing authorities from rushing to impose taxes after the ballot measure became public knowledge but before its enactment. (Implementation Guide, *supra*, pp. A-22, A-24.) There simply is no suggestion that the inclusion of a window period in Proposition 218 was intended to protect taxes adopted prior to that time from challenge. Accordingly, we conclude that Proposition 218 does not implicitly protect the utility tax from the voter approval requirement of Proposition 62.

5. *The Scope of the Order*

In issuing the writ of mandamus, the trial court ordered the City to conduct an election relating to the utility tax. However, applying Proposition

62 to the tax in question, we find that the City should not be compelled to hold an election, but rather be given the choice of holding an election or ceasing to collect the utility tax. (See §§ 53723, 53727, subd. (b).) We modify the court's order to reflect such a choice.

## DISPOSITION

The order of the superior court issuing the writ of mandamus is affirmed as modified. The matter is remanded to the superior court for the purpose of ordering the City either to hold an election on the tax within 90 days of this decision becoming final or to cease collecting the tax upon the expiration of that 90-day period.

Benke, Acting P. J., and McDonald, J., concurred.